IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHARTIS SPECIALTY INSURANCE COMPANY, | § § § |
| Plaintiff, | § § |
| vs. | § § CIVIL ACTION NO. 5:11-cv-00927 |
| TESORO CORPORATION | § § § |
| Defendant. | § § |

**PLAINTIFF CHARTIS SPECIALTY INSURANCE COMPANY'S
ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Chartis Specialty Insurance Company files this Original Complaint for Declaratory Relief against Tesoro Corporation.

### I. PARTIES

1. Chartis Specialty Insurance Company ("Chartis Specialty") is an Illinois corporation with its principal place of business in New York, New York. Chartis Specialty was formerly known as American International Specialty Lines Insurance Company.

2. Defendant Tesoro Corporation ("Tesoro") is a Delaware corporation with its principal place of business in San Antonio, Texas.

### II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Tesoro because Tesoro is a citizen of Texas, with its principal place of business in San Antonio, Texas.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Chartis Specialty and the Tesoro as they are citizens of different states. In addition, the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs.

5.  Venue in the Western District of Texas is proper under 28 U.S.C. § 1391(a)(1) because Tesoro is headquartered in San Antonio, Texas, and therefore is subject to personal jurisdiction in this district and division  Venue is also proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, including (a) the contracting and negotiating of the insurance policy because the original insured was located in San Antonio and the brokers were located in San Antonio (as well as Dallas and Houston ); (b) the negotiations leading to Tesoro's substitution on the policy because Tesoro's headquarters are in San Antonio; and (c) Tesoro's notice of the insurance claim and subsequent Tesoro claim correspondence was from its general counsel's office at Tesoro's headquarters in San Antonio.

6.  This matter is properly filed pursuant to 28 U.S.C. § 2201 because an actual controversy of a ripe and justifiable nature exists between Chartis Specialty and Tesoro as whether insurance coverage exists.

### III.  FACTS

**A.  The Policy.**

7.  The insurance coverage dispute at issue in this declaratory judgment action arises from Pollution Legal Liability Select policy no. PLS 6190132 (the "Policy") that Chartis issued to Ultramar Diamond Shamrock Corporation ("Ultramar") for the period August 31, 2000 to August 31, 2010.  Tesoro was later substituted as the insured in place of Ultramar.

8.  The insured properties include the former Avon Refinery located in Martinez, California on the east side of San Francisco Bay, which is now known as the Golden Eagle Refinery (the "Refinery").

9.      The 2,200-acre Refinery began operations in 1913 and refines crude oil to manufacture petroleum-based products, including gasoline, diesel, and jet fuels. The Refinery has had a succession of owners, including Getty Oil Company, Texaco Corporation, Phillips Petroleum Company, Tosco Corporation, Ultramar Diamond Shamrock, and Tesoro. Tesoro is the current owner and operator of the Refinery.

10.     The Policy generally provides coverage for certain environmental conditions, reimbursing the Insured for remediation costs or paying the remediation costs on behalf of the Insured that the Insured is legally obligated to incur. The Policy also provides coverage certain third-party claims relating environmental contamination.

11.     The Policy generally provides $100,000,000 in limits and has a $500,000 deductible.

12.     For pre-existing environmental conditions that are scheduled on the Policy, the Policy also has a separate $50 million self-insured retention ("SIR"). The SIR provision states that the Policy will pay covered Clean-Up Costs or Loss in excess of $50,000,000, which is to be "borne by the **Insured** and is not be insured." Only Clean-Up Costs or Loss that are otherwise covered under the Policy satisfy or erode the SIR.

13.     The Policy states that, in the event of any payment, Chartis Specialty is subrogated rights to all of the Insured's recovery against any person or organization, and the Policy prohibits the Insured from doing anything to prejudice Chartis Specialty's subrogation rights.

14.     In addition, the Policy prohibits the Insured from entering into a settlement, making any payment, or assuming any obligation without Chartis Specialty's consent.

**B.      Historical remediation at the Refinery and Tesoro's purchase of the Refinery.**

15.     Remediation at the Refinery started in 1985 by the Refinery's previous owners.

16. Prior to Ultramar's and Tesoro's ownership of the Refinery, Tosco and two other former owners—Phillips and Texaco—were remediating contamination at the Site in response to orders from the United States Environmental Protection Agency ("EPA") and California Regional Water Quality Control Board, San Francisco Bay Region ("Board").

17. In July 1993, Tosco, Phillips, and Texaco entered into a Joint Investigation and Remediation Agreement to perform government-mandated investigation and remediation, with each party contributing their share of the remediation costs.

18. Under this agreement, and as required under EPA and Board orders, Tosco paid $16.3 million in remediation costs.

19. Ultramar purchased the Refinery from Tosco in August 2000. As part of the purchase and sale agreement, Tosco contractually indemnified Ultramar for up to $50 million of environmental liability.

20. In May 2002, Ultramar sold the refinery to Tesoro Corporation, and Ultramar assigned to Tesoro the indemnification rights it had received from Tosco.

21. Chartis Specialty substituted Tesoro for Ultramar as the Named Insured on May 17, 2002.

**B.   Tesoro's lawsuit against Tosco/ConocoPhillips and the resulting settlement.**

22. In November 2003, Tesoro sued Tosco in Contra Costa County Superior Court, California, alleging that Tosco had fraudulently concealed environmental conditions at the Refinery, causing Tesoro to face substantial obligations and liabilities for the undisclosed conditions.

23. Tesoro also initiated arbitration in December 2003 seeking a determination that Tosco was responsible for the additional environmental liabilities.

24. Tosco counterclaimed, arguing that Tesoro was responsible for the additional liabilities and that the $50 million cap on Tosco's indemnity obligation also applied to any liability of Phillips, which operated the refinery before Tosco.

25. ConocoPhillips is the successor of both Phillips and Tosco.

26. On March 2, 2007, Tesoro and ConocoPhillips settled the lawsuit and arbitration.

27. Under the terms of the settlement, Tesoro received $58.5 million in exchange for Tesoro's release of ConocoPhillips, Tosco, and Phillips. Tesoro also agreed to assume liability for both Tosco's and Phillips' environmental liabilities at the Refinery.

28. Tesoro did not seek or obtain Chartis Specialty's consent to the settlement.

**C.    Tesoro provided notice of a potential claim and eventually filed a claim under the Policy.**

29. On February 13, 2007, less than a month before its settlement with Tosco, Tesoro provided its first notice to Chartis Specialty about the lawsuit and the environmental liabilities arising from pre-August 2000 operations at Refinery. Tesoro concluded that it "is not at this time requesting from Chartis Specialty a defense or indemnity under the Policy."

30. Tesoro did not inform Chartis Specialty at the time that the parties were considering settlement. In fact, Tesoro waited two and a half years—until October 2009—to notify Chartis Specialty of the settlement.

31. On July 18, 2007, Chartis Specialty issued a reservation of rights letter that reserved rights on various issues, but acknowledged that Tesoro was not requesting defense or indemnity. Chartis Specialty noted that because Coverage A had a $50 million SIR, Chartis would treat it as a potential claim. It asked to be apprised of all developments and specifically requested "[c]opies of all suits and related correspondences (Tesoro v. Tosco) regarding the site"

and "[a]ny other information that you believe may be useful to our investigation of this potential claim."

32. Tesoro did not provide any information about the arbitration proceeding or the contamination in response to Chartis Specialty's request.

33. Chartis Specialty's claim analyst attempted to call Tesoro on July 10, 2007, before issuing the reservation of rights, to determine the status of the arbitration. The claims analyst called again in February 2008, April 2008, and June 2008 requesting an update, but Tesoro did not provide any information in response to those requests.

34. On October 8, 2009, Tesoro finally notified Chartis Specialty of its settlement and receipt of $58.5 million from ConocoPhillips. Tesoro noted that in exchange for the settlement payment, it had released and agreed to indemnify ConocoPhillips from both Tosco's obligations for environmental conditions at the Refinery and Phillips' liabilities as a former owner of the Refinery.

35. In addition, on that same day, Tesoro notified Chartis Specialty of environmental conditions discovered at the Amorco Wharf, a satellite terminal at the Refinery, in 2006 for which cleanup and abatement orders had been issued and for which Tesoro said that it had spent approximately $5.6 million.

36. Tesoro stated that environmental liabilities had exceeded or will exceed the applicable deductibles or SIRs and demanded that Chartis Specialty agree to (1) reimburse past cleanup costs or losses in excess of the deductibles or SIRs and (2) pay on Tesoro's behalf all current and future cleanup costs or losses in excess of any deductible or SIR. That letter did not make a demand for reimbursement of any specific amounts.

**D.     Chartis investigated the claim and reserved its rights as to whether the SIR has been satisfied.**

37.     On October 15, 2009, Chartis Claims, Inc. ("Chartis Claims") sent a letter acknowledging receipt of Tesoro's letter and advising that Chartis Claims was commencing an investigation.

38.     In July and August 2010, Tesoro demanded that Chartis Specialty acknowledge that the $50 million SIR had been exhausted. Tesoro requested reimbursement of $19,988,000 in past cleanup costs that exceeded of the $50 million SIR and $9,645,587 for remediation costs associated with the new conditions at the Amorco Wharf exceeding the $500,000 deductible. It also demanded that Chartis Specialty agree to cover all current and future cleanup costs at the Refinery.

39.     Tesoro alleged that the $16.3 million of remediation costs paid by Tosco since 1993 at the Refinery should be applied towards Tesoro's $50 million SIR, even though Tesoro did not pay those remediation costs and was not legally obligated for that remediation.

40.     On November 10, 2010, Chartis Specialty issued a reservation of rights letter that acknowledged Tesoro's settlement of the suit and receipt of $58.5 million from ConocoPhillips in exchange for Tesoro's release and indemnity of ConocoPhillips. Chartis Specialty specifically reserved its rights with respect to whether the March 2007 settlement had prejudiced Chartis Specialty's subrogation rights and whether Tesoro had satisfied the $50 million SIR.

**E.     Chartis Specialty and Tesoro disagree on whether the SIR was exhausted.**

41.     Since being notified about Tesoro's claim and the settlement, Chartis and Tesoro have attempted to resolve the coverage issues under the Policy, but a dispute has arisen regarding the respective obligations and rights of Chartis Specialty and Tesoro and Tesoro's alleged exhaustion of the SIR.

42. Tesoro contends that the SIR has been satisfied because the amounts paid to Tesoro by ConocoPhillips pursuant to the settlement agreement apply and satisfy the Policy's $50,000,000 SIR. Tesoro also contends that remediation costs incurred by Tosco since 1993 also apply to the SIR.

43. The Policy, however, states the SIR is to "borne by the **Insured**," and so amounts paid or reimbursed by third parties cannot be used to meet the SIR. The amounts paid by ConocoPhillips pursuant to the settlement therefore do not satisfy or erode the SIR.

44. In addition, Tesoro's recovery from ConocoPhillips pursuant to the settlement agreement does not apply to satisfy the SIR because any such recovery is applied first to the payments by the Insured that exceed the limit of coverage and then to payments made by Chartis Specialty under the Policy. Tesoro has not made any payments that exceed the limit of coverage.

45. Moreover, payments made by Tosco for remediation costs that Tosco, not Tesoro, was legally obligated to incur do not satisfy the SIR because those are not amounts "borne by the **Insured**."

46. Tesoro has also claimed that the SIR is satisfied or eroded by the payment of certain costs that are not otherwise covered under the Policy.

## IV. REQUEST FOR DECLARATORY RELIEF

47. Chartis Specialty restates and incorporates fully the paragraphs above.

48. An actual controversy exists between the parties regarding Tesoro's satisfaction of the Policy's SIR.

49. Chartis Specialty requests a declaration of Chartis Specialty's and Tesoro's rights and obligations under the environmental insurance policy issued by Chartis Specialty.

50. Specifically, Chartis Specialty requests a declaration that:

   a. Tesoro has not yet satisfied the Policy's SIR.

   b. The remediation costs that are not otherwise covered by the Policy do not satisfy or erode the SIR.

   c. The amounts Tesoro recovered from ConocoPhillips in the settlement do not satisfy or erode the SIR.

   d. Chartis has no obligation to pay for past or future remediation costs until the amounts recovered by Tesoro from ConocoPhillips are fully exhausted in the payment of such costs <u>and</u> Tesoro has satisfied the SIR separate and apart from the amounts recovered from ConocoPhillips.

   e. Remediation costs paid by Tosco or ConocoPhillips that they were legally obligated to incur under the Joint Investigation and Remediation Agreement or any regulatory requirement do not satisfy or erode the SIR.

51. Chartis Specialty therefore requests that this Court declare the rights and other legal relations of the parties.

## V. PRAYER FOR RELIEF

WHEREFORE, Chartis Specialty respectively requests that the Court enter judgment declaring the parties' obligations and duties under the Policy as set forth above, and granting Chartis Specialty such other and further relief to which it may be entitled.

Respectfully submitted,

Dated: November 7, 2011

**GARDERE WYNNE SEWELL LLP**

By: _____
David H. Timmins, State Bar No. 00785106
Matthew Schroeder, State Bar No. 00791619
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
214-999-3000
214-999-4667 – Fax

**Attorneys for Plaintiff
Chartis Specialty Insurance Company**

DALLAS 2270225v.3