IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARTIS SPECIALTY INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § § | |
| vs. | § § | C.A. NO. 5:11-cv-00927-OLG |
| | § § | |
| TESORO CORPORATION, | § § § | |
| Defendant. | § § | |

**PLAINTIFF CHARTIS SPECIALTY'S RESPONSE TO TESORO'S MOTION TO DISMISS, STAY, OR TRANSFER**

David H. Timmins, State Bar No. 00785106
Matthew Schroeder, State Bar No. 00791619
**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas  75201
214-999-3000
214-999-4667 – Fax

**Attorneys for Plaintiff Chartis Specialty Insurance Company**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND .............................................................................................. 2

        A.      The Policy ............................................................................................. 2

        B.      Historical remediation at the Refinery and Tesoro's purchase of the Refinery. ..... 3

        C.      Tesoro's lawsuit against Tosco/ConocoPhillips and the resulting settlement. ....... 4

        D.      Tesoro eventually filed a claim under the Policy long after the settlement. ........... 4

        E.      Chartis Specialty and Tesoro have exchanged extensive correspondence and met three times regarding the remediation. ............................................................. 5

III.    ARGUMENT .................................................................................................... 6

        A.      This Court should exercise its discretion to accept jurisdiction over Chartis Specialty's declaratory judgment action. .................................................. 6

        B.      Under the first-to-file rule, this action should proceed, while the California action should be dismissed, stayed, or transferred. .................................................. 6

                1.      Factor One—The declaratory judgment action will not interfere with any parallel state court proceedings. ............................................................. 8

                2.      Factor Two—Chartis Specialty did not file this action improperly in anticipation of Tesoro's second-filed lawsuit in California. ....................... 8

                3.      Factors Three and Five—Chartis Specialty chose this proper and convenient district as the forum to resolve this dispute. .......................... 13

                        a.      This venue is proper and convenient. ................................................... 13

                        b.      The choice-of-law analysis shows Texas law applies. ........................ 15

                        c.      Extrinsic evidence is *not* case determinative and actually favors Chartis Specialty. ................................................................. 18

                4.      Factors Four and Six—Litigation in the Western District is not inequitable or inefficient as it will be comprehensive and fast. ................ 19

IV.     CONCLUSION .............................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*909 Corp. v. Village of Bolingbrook Police Pension Fund,*
    741 F. Supp. 1290 (S.D. Tex. 1990) ................................................................................. 13

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.,*
    358 F.3d 337 (5th Cir. 2004) ........................................................................................... 21

*Amerada Petroleum Corp. v. Marshall,*
    381 F.2d 661 (5th Cir. 1967) ........................................................................................... 15

*AMS Staff Leasing v. Starving Students, Inc.,*
    2003 WL 21436476 (N.D. Tex. June 18, 2003) ............................................................... 21

*AmSouth Bank v. Dale,*
    386 F.3d 763 (6th Cir. 2004) ........................................................................................... 15

*Broadhead v. Hartford Cas. Ins. Co.,*
    773 F. Supp. 882 (S.D. Miss. 1991) ................................................................................. 20

*Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC,*
    No. Civ. A. H-06-1330, 2006 WL 1984627 (S.D. Tex. July 14, 2006) ........................... 11, 16

*Excess Underwriters at Lloyd's, London v. Franks Casing Crew & Rental Tools, Inc.,*
    246 S.W.3d 42 (Tex. 2008) ............................................................................................. 14

*ICU Med., Inc. v. Rymed Techs., Inc.,*
    CA No. 07-468-JJF, 2008 WL 205307 (D. Del. Jan. 23, 2008) ...................................... 22

*Igloo Products Corp. v. The Mounties, Inc.,*
    735 F. Supp. 214 (S.D. Tex. 1990) ............................................................................. 10, 13

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.,*
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ............................................................................. 10

*Jones v. Francis Drilling Fluids, Ltd.,*
    No. G-07-0178, 2008 WL 5158268 (S.D. Tex. Dec. 9, 2008) ......................................... 19

*McCracken v. U.S. Fire Ins. Co.,*
    802 F. Supp. 30 (W.D.Tex.1992) ..................................................................................... 14

*O'Hare v. Vulcan Capital, LLC,*
    No. SA-04-CA-556-OG, 2007 WL 996437 (W.D. Tex. Feb. 20, 2007) (Garcia, J) .......... 10

*Odom v. Microsoft*,
    2009 WL 279968 (E.D. Tex. Jan. 30, 2009) ........................................................................ 17

*Orix Credit Alliance v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) .......................................................................................................... 9

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .......................................................................................................... 10

*Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines Ins. Co.*,
    653 F. Supp. 2d 690 (S.D. Tex. 2009) .................................................................................... 20

*Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*,
    145 S.W.3d 337 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ........................................ 21

*Rico Records Distribs., Inc. v. Ithier*,
    364 F. Supp. 2d 358 (S.D.N.Y. 2005) .................................................................................... 16

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*,
    607 F. Supp. 2d 769 (E.D. Tex. 2009) ............................................................................ 18, 19

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ...................................................................................................... 22

*Sherwin-Williams Co. v. Holmes Cnty.*,
    343 F.3d 383 (5th Cir. 2003) ................................................................................ 10, 11, 12, 16

*St. Paul Ins. Co. v. Trejo*,
    39 F.3d 585 (5th Cir. 1994) ............................................................................................ 10, 11, 16

*Toy Biz, Inc. v. Centuri Corp.*,
    990 F. Supp. 328 (S.D.N.Y. 1998) .......................................................................................... 17

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*,
    996 F.2d 774 (5th Cir.1993) ...................................................................................................... 10

*Twin City Ins. Co. v. Key Energy Servs., Inc.*,
    No. H–09–0532, 2009 WL 1544255 (S.D. Tex. June 2, 2009) ............................................ 15

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ...................................................................................................... 10

*Zurich Am. Ins. Co. v. Vitus Marine, LLC*,
    No. H-11-3022, 2011 WL 4972025 (S.D. Tex. Oct. 19, 2011) ................ 14, 15, 19, 20, 21, 22

## STATUTES

28 U.S.C. §1404 ........................................................................................................................ 16

28 U.S.C. § 2201(a) ........................................................................................................... 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12 ................................................................................. 9

Federal Rule of Civil Procedure 13 ............................................................................... 22

Restatement Second of Conflict of Laws section 193 ............................................. 18, 19

Plaintiff Chartis Specialty Insurance Company files this Response to Tesoro Corporation's Motion to Dismiss, Stay, or Transfer These Proceedings to the Northern District of California.

## I.   INTRODUCTION

Chartis Specialty Insurance Company ("Chartis Specialty") filed this suit to obtain a declaratory judgment regarding the meaning and application of the Self-Insured Retention ("SIR") provision in an insurance policy issued to Tesoro Corporation ("Tesoro").  In a settlement undisclosed to Chartis Specialty, Tesoro received $58.5 million in exchange for assuming additional environmental liability and releasing the prior owner of the site.  Tesoro contends that it has satisfied the $50 million SIR by using the amounts it received via settlement.  Tesoro also contends that it should be credited for remediation costs paid by other parties and demands that Chartis Specialty pay for costs related to liabilities originally not insured.

Chartis Specialty filed this lawsuit on November 7, 2011 in the Western District of Texas, where Tesoro has its headquarters.  Chartis Specialty properly invoked the Declaratory Judgment Act in this suit because Chartis Specialty and Tesoro were at an impasse in their discussions about the SIR provision.  The Western District is an appropriate venue because Tesoro is headquartered here, the negotiation of the policy and subsequent endorsements occurred here, and key witnesses are located here.  Despite Chartis Specialty's proper filing in Tesoro's home district, Tesoro responded by filing a competing action 22 days later in the Northern District of California, requesting mirror-image declaratory relief and asserting affirmative claims, yet disingenuously protesting that Chartis Specialty had somehow taken unfair advantage.

Tesoro's Motion to Dismiss, Stay, or Transfer provides no legitimate basis for Tesoro's effort to avoid this Court's jurisdiction.  In fact, Tesoro does not even contend this Court lacks jurisdiction over this action.  Rather, Tesoro is asking the Court to exercise its discretion to allow a second-filed action in California to take precedence over this case.  Tesoro fails to cite the

authoritative Fifth Circuit cases that lay out the principles of declaratory judgment proceedings and instead, simply tries to tarnish Chartis Specialty's first-filed lawsuit by using buzz words like "preemptive strike," "forum shopping," "bad faith filing," and even "chicanery." Tesoro must meet a high burden to allow its second-filed case to take precedence, and invective does not satisfy the burden.  Not only are these allegations baseless, a proper analysis of the factors applied by the Fifth Circuit demonstrates that Chartis Specialty's first-filed case takes precedence and that Tesoro's motion must be denied.

## II. BACKGROUND

### A.    The Policy

This insurance coverage dispute arises from a Pollution Legal Liability Select policy  (the "Policy") that Chartis Specialty issued to Ultramar Diamond Shamrock ("Ultramar") for the period August 31, 2000 to August 31, 2010.  Chartis Compl. ¶ 7; Tesoro Compl. ¶¶ 39-40.[1]  The Policy was negotiated over a two-month period between Chartis Specialty's underwriter in Houston and Ultramar's broker in San Antonio and Dallas.  *See* App. 0058; Tesoro Ex. D.  Ultramar, like Tesoro, was located in Texas when the Policy was negotiated, issued, and delivered.  App. 0018.  When it later purchased the insured property, Tesoro was substituted as the insured in place of Ultramar via the assistance of the same Texas broker.  App. 0054, 0060.  In total, four endorsements were added later by Texas underwriters, including an endorsement adding Valero Energy Corporation ("Valero") as an additional insured.  App. 0054-58.

The insured properties include the former Avon Refinery located in Martinez, California on the east side of San Francisco Bay that is now known as the Golden Eagle Refinery (the "Refinery").  Mot. at 3; Tesoro Compl. ¶¶ 7-8.  The Policy generally provides coverage for certain environmental conditions, reimbursing the Insured for remediation costs or paying the remediation

---

[1] American International Specialty Lines Insurance Company is now known as Chartis Specialty Insurance Company.

costs on behalf of the Insured that the Insured is legally obligated to incur.  App. 0050.  The Policy

also provides coverage for certain third-party environmental contamination claims.  *Id.*  The Policy

generally provides $100,000,000 in limits and has a $500,000 deductible.  App. 0020.

For pre-existing environmental conditions that are scheduled on the Policy, the Policy also

has a separate $50 million SIR.  App. 0044.  The SIR provision states that the Policy will pay

covered Clean-Up Costs or Loss in excess of $50,000,000, which is to be "borne by the **Insured**

and is not to be insured."  App. 0044.  Only Clean-Up Costs or Loss that are otherwise covered

under the Policy satisfy or erode the SIR.  App. 0044-45.

The Policy states that, in the event of any payment, Chartis Specialty is subrogated to all of

the Insured's recovery against any person or organization, and the Policy prohibits the Insured from

doing anything to prejudice Chartis Specialty's subrogation rights.  App. 0036.  In addition, the

Policy prohibits the Insured from entering into a settlement, making any payment, or assuming any

obligation without Chartis Specialty's consent.  App. 0037.

**B.      Historical remediation at the Refinery and Tesoro's purchase of the Refinery.**

Tosco Corporation ("Tosco") and two other former owners—Phillips Petroleum Company

("Phillips") and Texaco Inc. started remediation at the Refinery in 1985 in response to orders from

the United States Environmental Protection Agency ("EPA") and California Regional Water

Quality Control Board, San Francisco Bay Region ("Board").  Tesoro Compl. ¶¶ 31-35.  As

required under EPA and Board orders, Tosco paid $16.3 million in remediation costs.  *See id.* ¶ 15.

Ultramar purchased the Refinery from Tosco in August 2000.  *Id.* ¶ 36.  As part of the

purchase and sale agreement, Tosco agreed to contractually indemnify Ultramar for up to $50

million of environmental liability.  *Id.* ¶¶ 37-38.  In May 2002, Ultramar sold the refinery to Tesoro

and assigned to Tesoro its rights under the Tosco indemnity.  *Id.* ¶ 52.  Chartis Specialty substituted

Tesoro for Ultramar as the Named Insured on May 17, 2002.  *Id.* ¶¶ 7-8.

**C.     Tesoro's lawsuit against Tosco/ConocoPhillips and the resulting settlement.**

In 2003, Tesoro sued Tosco in Contra Costa County Superior Court, California, alleging that Tosco had fraudulently concealed environmental conditions at the Refinery, causing Tesoro to face substantial obligations and liabilities for the undisclosed conditions.  *Id.* ¶ 60.  Tesoro also initiated arbitration seeking a determination that Tosco was responsible for the additional environmental liabilities.  *Id.* ¶ 61.  Tosco counterclaimed, arguing that Tesoro was responsible for the additional liabilities and that the $50 million cap on Tosco's indemnity obligation also applied to any liability of Phillips, which operated the refinery before Tosco.  *Id.* ¶¶ 62, 65.  On January 4, 2007, the arbitrators denied ConocoPhillips' (the successor of both Phillips and Tosco) summary judgment motion arguing the cap applied to Phillip's liability.  *Id.* ¶ 65.

On March 2, 2007, Tesoro and ConocoPhillips settled the lawsuit and arbitration.  *Id.* ¶ 72. Under the terms of the settlement, Tesoro received $58.5 million in exchange for Tesoro's release of ConocoPhillips, Tosco, and Phillips.  *Id.*  Tesoro also agreed to assume liability for both Tosco's and Phillips' environmental liabilities at the Refinery.  *Id.*  Tesoro did not seek or obtain Chartis Specialty's consent to the settlement.

**D.     Tesoro eventually filed a claim under the Policy long after the settlement.**

On February 13, 2007, less than a month before its settlement with Tosco, Tesoro provided its first notice to Chartis Specialty about the lawsuit and the environmental liabilities arising from pre-August 2000 operations at the Refinery.  *Id.* ¶ 85.  And then Tesoro waited two and a half years after the settlement to notify Chartis Specialty of the settlement, despite the fact that Chartis Specialty had repeatedly asked for information through 2007 and 2008.  *See* App. 0065-67.

On October 8, 2009, Tesoro finally notified Chartis Specialty of its settlement and receipt of $58.5 million from ConocoPhillips, as well as notifying Chartis Specialty about contamination discovered in 2006 at the Amorco Wharf, a satellite terminal at the Refinery.  *Id.*; *see also* Tesoro

Compl. ¶ 87.  Tesoro notes, that in exchange for the settlement payment, it had released and agreed to indemnify ConocoPhillips from both (1) Tosco's obligations for environmental conditions at the Refinery and (2) Phillips' liabilities as a former owner of the Refinery.  App. 0066.

    **E.**    **Chartis Specialty and Tesoro have exchanged extensive correspondence and met three times regarding the remediation.**

In 2010, Tesoro demanded that Chartis Specialty acknowledge that the $50 million SIR had been exhausted, reimburse it for past remediation costs, and pay future costs.  *See* Tesoro Compl. ¶¶ 88-89.  Tesoro alleged that the $16.3 million in remediation costs paid by Tosco since 1993 at the Refinery should be applied towards Tesoro's $50 million SIR, even though Tesoro did not pay those remediation costs and was not legally obligated for that remediation.  *See* App. 0072.  Tesoro did not suggest that it was contemplating a lawsuit.  *E.g.,* App. 0002 (Campagne Decl. ¶¶ 8-9); 0068-70; 0071-76.  On November 10, 2010, Chartis Specialty issued a reservation of rights letter advising Tesoro that the March 2007 settlement may have prejudiced Chartis Specialty's subrogation rights and questioning whether Tesoro had satisfied the $50 million SIR.  App. 0080.

Through a request by Tesoro's current broker in Houston, the parties met on October 29, 2010, in New York and subsequently met again on July 21-22, 2011 and September 8, 2011 in California to discuss the claims.  App. 0001 (Campagne Decl ¶ 3); 0077; 0096; 0097.  The discussions at those meetings, and the communications that led up to and followed from them, focused primarily on the technical and cost aspects of the various components of Tesoro's claims and secondarily on coverage issues implicated by the nature of the claims and the manner in which they were handled historically.  *Id.*  Before and after the meetings, Tesoro's in-house counsel in San Antonio, and later its outside counsel in Washington, D.C., sent a number of letters enclosing requested documents and following up on Tesoro's previous demand.  *E.g.*, App. 0071, 0078, 0087; 0089; 0091; 0098.  In the correspondence and meetings, Tesoro did not indicate that it intended to file suit in the Northern District of California or elsewhere.  *Id.*; App. 0002 (Campagne Decl. ¶¶ 8).

During these meetings, an impasse arose regarding the parties' respective positions over Tesoro's alleged exhaustion of the SIR.  App. 0002 (Campagne Decl. ¶¶ 8-9).  In an effort to obtain a resolution of this dispute, Chartis Specialty filed this declaratory judgment action on November 7, 2011.  App. 0008.  Tesoro received the complaint the next day—November 8, 2011.  App. 0002 (Campagne Decl. ¶ 11).  On November 9, 2011, Tesoro was formally served with process.  App. 0102.  Tesoro then waited three weeks before filing its California action on November 29, 2011.  On November 30, 2011, Tesoro filed a motion to dismiss, stay, or transfer, but has not yet filed an answer.[2]

## III.   ARGUMENT

### A.   This Court should exercise its discretion to accept jurisdiction over Chartis Specialty's declaratory judgment action.

The Declaratory Judgment Act provides that "any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  There are three steps that guide a court's analysis on a motion to dismiss a declaratory judgment action: (i) whether the action is a justiciable controversy; (ii) whether the court has the authority to grant declaratory relief; and (iii) whether the court should exercise its discretion to decide the action.  *Orix Credit Alliance v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

Tesoro does not dispute the existence of an "actual controversy" or that the Court has the authority to issue a declaratory judgment to determine the operation of the SIR provision.  Accordingly, the issue is whether the Court should exercise its discretion to decide this action.  *See* Tesoro Compl. ¶¶ 115; 124 (stating there is an "actual, justiciable controversy").

### B.   Under the first-to-file rule, this action should proceed, while the California action should be dismissed, stayed, or transferred.

---

[2] A motion to dismiss based on a party's objection to the first-to-file rule is not one of the enumerated bases for dismissal under Federal Rule of Civil Procedure 12.  *See* Fed. R. Civ. 12(b).  In fact, Tesoro never identifies the statute or federal rule under which its motion was brought.  Because Tesoro's motion is not a Rule 12 motion, Tesoro has failed to timely file its answer.

The Fifth Circuit has made clear that, where there are "substantially similar" actions filed in different districts, the district where the action was first filed should adjudicate the controversy absent compelling circumstances. *O'Hare v. Vulcan Capital, LLC*, No. SA-04-CA-556-OG, 2007 WL 996437, at *2 (W.D. Tex. Feb. 20, 2007) (Garcia, J) (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)).[3]   The Fifth Circuit has stated that only a *narrow category* of declaratory judgment actions are subject to dismissal "for reasons found improper and abusive." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003).   In making this determination, a district's court discretion "is not unfettered," and the court cannot decline jurisdiction on a matter of "whim or personal disinclination." *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774, 778 (5th Cir. 1993).   Rather, "unless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Id*.   Tesoro has the burden to show these compelling circumstances. *Igloo Products Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990).

The seven-factor analysis under the Fifth Circuit's *Trejo* decision guides this inquiry:

     (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

     (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

     (3) whether the plaintiff engaged in forum shopping in bringing the suit;

     (4) whether there are possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums;

     (5) whether the court where the declaratory action is brought is a convenient forum;

     (6) whether retaining the lawsuit in federal court serves the purposes of judicial economy; and

---

[3] Courts in the Ninth Circuit, including the Northern District of California, also follow the "first-to-file" rule. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982); *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 960 (N.D. Cal. 2008).

> (7) whether the federal court is being called upon to construe a state judicial decree entered in a parallel state court proceeding.[4]

*Sherwin-Williams*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994)).  The Fifth Circuit further has refined these factors by instructing that the second, third, and fourth factors—the so-called "fairness" factors—should not be applied literally.[5]  *Sherwin-Williams*, 343 F.3d at 392.  As set forth below, a proper balancing of the pertinent factors in accordance with *Sherwin-Williams* demonstrates that dismissal, stay, or transfer of this suit would be an abuse of this Court's discretion.

### 1. Factor One—The declaratory judgment action will not interfere with any parallel state court proceedings.

Because there is no pending state court case, but rather a parallel federal court action, the first factor weighs in favor of this Court retaining jurisdiction over Chartis Specialty's declaratory judgment action.  *See Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. Civ. A. H-06-1330, 2006 WL 1984627, at *4 (S.D. Tex. July 14, 2006) ("As the Fifth Circuit explained in *Sherwin-Williams*, the analysis [of whether to entertain a declaratory judgment action] is significantly affected by the fact that no state-court action is pending elsewhere").

### 2. Factor Two—Chartis Specialty did not file this action improperly in anticipation of Tesoro's second-filed lawsuit in California.

Although Tesoro derides Chartis Specialty's choice to seek a judicial resolution as anticipatory, the Fifth Circuit has held that this is a perfectly appropriate and permissible use of the declaratory judgment procedure.  Chartis Specialty brought this suit to obtain a prompt resolution of a dispute regarding the interpretation and application of the SIR provision that arose during investigation discussions.  It was clearly *not* filed to forestall Tesoro from bringing its California lawsuit, since Tesoro never indicated that it intended to sue Chartis Specialty in California or

---

[4] Since no state court proceeding is pending, factor seven is not relevant.

[5] Indeed, it speaks volumes that Tesoro's motion fails even to mention *Sherwin-Williams*—the leading Fifth Circuit case on applying these factors.

anywhere else.  *See* App. 0002 (Campagne Decl. ¶¶ 8-9).  Indeed, the fact that Tesoro subsequently filed a request for the same relief in another court demonstrates that it was appropriate for Chartis Specialty to seek a resolution of the issue through declaratory judgment.  Tesoro Compl. ¶ 115.

Moreover, Tesoro has offered no evidence that it intended to file a separate suit or that it delayed its filing because of ongoing discussions. Tesoro waited another three weeks to file its competing California action, so Tesoro can hardly claim that Chartis Specialty raced to the courthouse to jump in front of an impending filing by Tesoro.  *See* App. 002 (Campagne Decl. ¶¶ 8-9).  Tesoro's attempts to paint Chartis Specialty in a bad light by misrepresenting and mischaracterizing the events are not sufficient to meet its burden on this factor.

Moreover, contrary to Tesoro's assertions, the "mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court."  *Sherwin-Williams,* 343 F.3d at 387.  As with any declaratory judgment action, the specter of other litigation necessarily hangs over this action; otherwise, the necessary "case or controversy" would not be present to bring the matter within the confines of Article III of the Constitution.  Moreover, the Fifth Circuit has made clear that "[a] proper purpose of [bringing a declaratory judgment action] is to allow potential defendants to resolve a dispute without waiting to be sued."  *Id.* at 397.

This is clearly a dispute that warrants Chartis Specialty's request for declaratory relief. Tesoro contends that the amounts paid to Tesoro by ConocoPhillips pursuant to the settlement agreement satisfy the Policy's $50,000,000 SIR.  Tesoro contends that remediation costs incurred by Tosco since 1993 also satisfy the SIR.  The Policy, however, states the SIR is to "borne by the **Insured**," so amounts paid or reimbursed by third parties cannot be used to meet the SIR.  *See* App. 0044.  In addition, Tesoro's recovery from ConocoPhillips pursuant to the settlement agreement could not satisfy the SIR because any such recovery is applied first to the benefit of the highest

level of liability, not the lowest.  Moreover, payments made by Tosco for remediation costs that Tosco, not Tesoro, was legally obligated to incur do not satisfy the SIR because those are not amounts "borne by the **Insured**."  Further, Tesoro has  claimed that the SIR is satisfied or eroded by the payment of certain costs that are not otherwise covered under the Policy.

This action was not also improperly anticipatory.  Tesoro has provided no evidence that Chartis Specialty filed this action in response to a direct threat of litigation by Tesoro.  There was no notice letter or other communication conveying a specific threat of litigation in California or elsewhere.  App. 0002 (Campagne Decl. ¶¶ 8-9).  The courts departing from the first-to-file rule have typically found the necessary "compelling circumstances" only when the declaratory judgment plaintiff has notice of the other party's intent to file its own lawsuit.  *See, e.g.*, *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292-93 (S.D. Tex. 1990) (finding "compelling circumstances" warranting departure from first-to-file rule where declaratory judgment plaintiff in first-filed action had "notice [via letter] that the other party intend[ed] to file suit involving the same issues in a different forum" and cited alleged violations of the securities law).  Not a single letter sent by Tesoro indicates that Tesoro was going to sue Chartis Specialty.  While often reiterating its demand for coverage, Tesoro's letters almost all end with a statement requesting an opportunity to meet to discuss the claim status, not imminent litigation.  *E.g.,* App. 0090 ("We would appreciate the opportunity to meet with Chartis in April to discuss the status of the claim.).  These letters fall short of giving Chartis Specialty a deadline after which Tesoro would file a suit or notice that the lawsuit would be in the Northern District of California.  *See Igloo Prod. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990) (noting that the suit was anticipatory because the defendant had provided the plaintiff a draft complaint before the plaintiff filed the first suit).

Instead of showing it had threatened litigation, Tesoro merely suggests it was caught off guard when Chartis Specialty filed this suit while the parties were still negotiating, but Tesoro's assertion does not provide a basis to avoid the first-to-file rule.  The parties' correspondence shows that the meetings generally were intended to discuss technical issues and necessary proof of Tesoro's claim.  *E.g.*, App. 0078, 0087; 0089; 0091; 0096, 0098.  Chartis Specialty participated in these meetings to get further information about Tesoro's claim, but those discussions were not intended to settle it completely.  App. 0002.  (Campagne Decl. ¶ 6).  Tesoro complains that it was arranging another meeting with Chartis Specialty's California counsel before Chartis Specialty's Texas litigation counsel filed the suit, but that results only from the fact that Chartis Specialty retained different counsel to handle the declaratory judgment action to resolve the SIR impasse.  It is certainly not bad faith for an insurer to pursue judicial resolution of such a dispute, and Tesoro cannot and does not claim that it has been prejudiced.  *See McCracken v. U.S. Fire Ins. Co.*, 802 F. Supp. 30, 37 (W.D.Tex.1992) (not bad faith for an insurer to seek a declaratory judgment); *Excess Underwriters at Lloyd's, London v. Franks Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 67 (Tex. 2008) (Supreme Court of Texas encouraging prompt resolution of coverage disputes through declaratory actions).

Regardless, the circumstances here are far different from the egregious acts addressed in the cases cited by Tesoro.  In the case that Tesoro primarily relies upon—*Mission Ins. Co. v. Puritan Fashions Corp.*—the insurer had engaged in extreme and extensive deception intended to delay the insured's filing of suit.  The insurer delayed the insured's filing by offering an extension to the contractual time limitation to file a suit, representing that it would give the insured a written statement of its position on the coverage issue and telling the insured that it could postpone filing suit until after receiving the written statement. 706 F.2d 599, 601 (5th Cir. 1983).  The insurer then

filed a declaratory judgment action without ever providing the written statement.  *Id*. at 600.[6]

Tesoro's other cases are also easily distinguished because they are similar acts intended to delay the

other party from filing an already threatened suit.  *See, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763,

789-90 (6th Cir. 2004) (finding an improper anticipatory filing where the first-filing party signed

tolling agreements, specifically requested a settlement demand, and said it was considering the

settlement); *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H–09–0532, 2009 WL 1544255, at

*5-6 (S.D. Tex. June 2, 2009) (finding the first-to-file rule governed where both parties filed

anticipatory suits right after an agreement to not file a suit expired and the parties were at an

impasse in alternative dispute resolution); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661,

662-64 (5th Cir. 1967) (on receipt of letter indicating sender would sue in one district unless

recipient appeared voluntarily in another, recipient immediately sued sender).  Here, in contrast,

Tesoro offers no evidence that it was planning to file its own lawsuit, much less that it told Chartis

Specialty of that plan.

     Further, Tesoro argues that it did not file its suit earlier because of Chartis Specialty's

"chicanery," but Tesoro's argument rings hollow based on how long it took Tesoro to file its

competing lawsuit.  Tesoro, a Fortune 150 company represented by one of the largest law firms in

the world, waited 22 days after being informed about the complaint and 21 days after service before

filing the second suit.  In an effort to mischaracterize the two filings as a photo finish, Tesoro

amazingly says that that its filing occurred merely "several days later."[7]  Tesoro's actual delay of

more than three weeks demonstrates that it was not planning an imminent filing of its own.  *See*

---

[6] Also, *Mission* shows that the party seeking to dismiss the first-filed case must submit actual evidence to meet its burden.  The insured in *Mission* submitted an affidavit stating that (1) it had drafted the complaint before being induced to not file it, and (2) twice it planned to file the complaint in the other jurisdiction.  *Id*. at 602.  Tesoro cannot submit that type of evidence because there is no record of such misleading actions taken by Chartis Specialty.

[7] Tesoro twice stated that its lawsuit was filed only "several days" after Chartis' action.  Mot. at 2; 11.

*Rico Records Distribs., Inc. v. Ithier*, 364 F. Supp. 2d 358, 361 (S.D.N.Y. 2005) (filing the second

suit two months later "completely undercuts their claim" that they intended to immediately and

firmly commence an action).

By filing its declaratory judgment action in this district, Chartis Specialty cannot be said to

have anticipated a filing that Tesoro never mentioned or deprived Tesoro of a choice of forum that

Tesoro had never announced.

### 3. Factors Three and Five—Chartis Specialty chose this proper and convenient district as the forum to resolve this dispute.

Perhaps only slightly less amazing than its characterization of its California suit occurring

only "several days" after this action is Tesoro's complaint that Chartis Specialty's selection of

Tesoro's hometown was an improper and inconvenient forum.  Tesoro alleges that Chartis Specialty

improperly selected this forum because (1) Chartis wants to exclude intent evidence so it selected a

Texas forum because Texas law excludes extrinsic evidence where the contract is not ambiguous

while Tesoro mistakenly argues California law allows the evidence to determine ambiguity and (2)

California is more convenient.  Tesoro's unsupported allegations do not show that this Texas forum

is inappropriate, burdensome, or prejudicial so as to make Chartis Specialty's forum choice abusive.

The Fifth Circuit allows a declaratory action to be brought in a federal court with jurisdiction to

hear it, so the question is whether Chartis Specialty's choice of forum here reflects an improper use

of the Declaratory Judgment Act.  *See Sherwin-Williams*, 343 F.3d at 391 (the issue is "abusive

forum shopping"); *Canatxx Gas Storage,* 2006 WL 1984627, at *5 ("As the Fifth Circuit has noted,

every time a lawsuit is filed, a forum choice is made.  Dismissing a declaratory judgment action or

deciding not to follow the first-filed rule requires more than an accusation of 'forum shopping.'").

### a. This venue is proper and convenient.

Chartis Specialty's venue choice is in compliance with 28 U.S.C. §1404 and is therefore

neither improper nor abusive.  *See Sherwin-Williams*, 343 F.3d at 400 (*Trejo* analysis only requires

a determination that the venue is a convenient one, not that it is the most convenient forum or as convenient for all parties); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331-32 (S.D.N.Y. 1998) (finding no forum shopping because there was a strong connection to the forum, including the fact that a party was headquartered in the district.)

Tesoro's claim of burden based on documents being located in California reflects an antiquated view of document production and is inconsistent with the fact that Tesoro, as required by the Policy, has already electronically produced 250,000 pages of "documentation regarding the costs spent by Tesoro." App. 0038 (Policy Condition K requires Tesoro to provide all Clean-Up Conditions and Pollution Conditions information); Mot. at 14.  In fact, a large portion of these documents were produced by Tesoro's internal counsel based in its San Antonio headquarters, so it is likely that much of the relevant documentation is located in the Western District.  App. 0088 (Tesoro scanning the documents); 0078; 0087; 0089; 0091.  The remainder was produced by Tesoro's Washington, D.C. counsel.  *E.g.*, App. 0098.  If there are additional documents in California, they can easily be transported by disk, flash drive, or hard drive.  *Odom v. Microsoft*, 2009 WL 279968 at *3 (E.D. Tex. Jan. 30, 2009) ("Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone.").

For witnesses, Tesoro merely states that individuals "responsible for remedial work" are located in California, ignoring the fact that the vast majority of witnesses are located in Texas.  Not only is Tesoro headquartered in San Antonio, the Policy was negotiated in Texas by a Chartis Specialty underwriter in Houston and a San Antonio/Dallas insurance broker for Ultramar and delivered to Ultramar in San Antonio.  Tesoro Compl. ¶ 6; Tesoro Ex. D; App. 00018-19; 0056; 0058; 0059.  Ultramar maintained its principal place of business in San Antonio, as does its

successor Valero.  Endorsements 12-15 were added later in Texas, substituting Tesoro for Ultramar,

adding Valero as an additional insured, adding Tesoro's new broker (Aon in Houston, who arranged

the first meeting between the parties and attended all three meetings), and inserting Tesoro's

address change.  App. 0054-57; 0077; 0097.  Some of the Tesoro employees who attended the

meetings, including a senior environmental officer, are based in San Antonio.  App. 0002

(Campagne Decl ¶ 4).  Moreover, contrary to Tesoro's argument, the costs of litigating are

generally recognized as cheaper in Texas than California.  *See Sanofi-Aventis Deutschland GmbH v.*

*Genentech, Inc*., 607 F. Supp. 2d 769, 778-80 (E.D. Tex. 2009) ("pointing out" litigation costs,

including the costs of appearing as a witness, are more expensive in Northern California than

Texas).

### b.  The choice-of-law analysis shows Texas law applies.

In making its forum-shopping argument, Tesoro makes a red herring choice-of-law analysis.

Tesoro contends that California law should apply to this coverage dispute because the location of

the insured risk will dictate which state's law applies.  Tesoro's truncated discussion is simply

incorrect.  A proper choice-of-law analysis supports the application of Texas law because Texas has

a more significant interest in the parties and the coverage issues presented here.

Under Texas choice-of-law rules, the location of the insured risk is only one of multiple

factors a court must evaluate.  Even the cases Tesoro relies on recognize that the "most significant

relationship" test involves the weighing of public policy in relation to particular contacts:

> Under the Restatement, the factors the court must consider include (1) the needs of
> the interstate and international systems, (2) the relevant policies of the forum, (3) the
> relevant policies of other interested states and the relative interests of those states in
> the determination of the particular issue, (4) the protection of justified expectations,
> (5) the basic policies underlying the particular field of law, (6) certainty,
> predictability, and uniformity of result, and (7) ease in the determination and
> application of the law to be applied.  *See* Restatement (Second) of Conflict of Laws §
> 6(2) (1971).  The types of contacts to be considered in applying these principles
> include (1) the place of contracting, (2) the place of negotiation, (3) the place of
> performance, (4) the location of the contract's subject matter, and (5) the domicile,

residence, nationality, place of incorporation, and place of business of the parties.
*Id.* § 188(2).

*Jones v. Francis Drilling Fluids, Ltd.*, No. G-07-0178, 2008 WL 5158268, at *5 (S.D. Tex. Dec. 9,

2008).

Tesoro nevertheless contends that the choice-of-law analysis should be reduced to a single

factor—the location of the insured risk—where the policy at issue covers only one location.

Tesoro's argument rests entirely on Restatement Second of Conflict of Laws section 193, which

provides that the location of the insured risk should be given greater weight if the risk is principally

located in a single state.  Restatement § 193, cmt. b.  The reasoning behind this approach, however,

is explained in the preceding paragraph:

> In the nature of things, the policy will usually be solicited in the state of the insured's
> domicile and usually the insured risk will also be located there.  In the normal case,
> therefore, the policy will have been solicited and delivered and the last act necessary
> to make the contract binding will have taken place in the state where the insured is
> domiciled or incorporated, and where the insured risk is located.

*Id.*  Thus, the location of insured risk can—in the normal case—short circuit the choice-of-law

analysis because it normally is where the policy was solicited, negotiated, and formed.  But where

the insured risk is located in a different state from where the contract was formed and the dispute

involves only coverage issues, the general rule does not apply because the location of the insured

risk has little significance.  *See, e.g.,* Restatement § 193 (the law of the location of the insured risk

applies "unless with respect to the particular issue, some other state has a more significant

relationship"); *Zurich Am. Ins. Co. v. Vitus Marine, LLC*, No. H-11-3022, 2011 WL 4972025, at *4

(S.D. Tex. Oct. 19, 2011).

In *Zurich*, the insured risk was located in Texas, while the formation and negotiation of the

insurance policy occurred in Washington.  The plaintiff argued Texas law should apply under

Restatement section 193.  The court disagreed, recognizing that the law of the state where the

insured risk is located does not apply if "some other state has a more significant relationship…to the

transaction and the parties." *Id.* (citing Restatement § 193).  The court, noting that "under Texas

law, there is a presumption that the parties intended their insurance contract to be evaluated under

the law of the state where the contract was made," found Washington law would apply to coverage

issues because the policy was negotiated and entered into in Washington.  *Id.*; *see also Broadhead

v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882, 892-93 (S.D. Miss. 1991) ("it is abundantly clear Texas

law governs" where the policies were "negotiated and executed in Texas, and were issued by

Hartford in Texas to Tomlinson, a Texas corporation" because the "issues…are mainly matters of

interpreting the policy and applying the facts to determine coverage.").

Rightly considered, the Restatement factors require the application of Texas law to this

dispute.  Although the location of the insured risk is California, every contact relevant to resolving

the coverage issues implicates Texas law: the policy was solicited, negotiated, and issued in Texas,

through a Texas broker, to Ultramar and then Tesoro, which have their principal places of business

in Texas, and four additional endorsements were added in Texas.  *See supra* at 14.  This is therefore

not the "normal case" contemplated by Restatement section 193 where the location of the insured

risk is also the state where the contract was entered into.  *See* Restatement § 193, cmt. b.

Texas has the strongest interest in the outcome of coverage issues concerning the policy,

which was issued by Chartis Specialty while conducting business in Texas, to Tesoro, which has its

principal place of business in Texas.[8]  *See Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines

Ins. Co.*, 653 F. Supp. 2d 690, 703 (S.D. Tex. 2009) ("Texas has a strong interest in the outcome of

an insurance coverage dispute involving an insurer doing business in Texas with an insured whose

---

[8] Tesoro's argument that California interests are implicated because Californians want contamination
to be "quickly and clearly addressed" is misleading.  Mot. at 14.  This dispute has nothing to do with whether
the remediation will occur and how quickly.  The federal and state regulators require Tesoro and other
financially secure major oil companies to remediate the Refinery as quickly and thoroughly as possible, and
that remediation has been, and continues to be, conducted irrespective of insurance considerations.  The
dispute in both lawsuits is the Policy's operation regarding how much of Tesoro's remediation costs are
reimbursable under the Policy, not whether the remediation will occur.

principal place of business is in Texas."); *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d

337, 346 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Texas has a strong interest in the

outcome of an insurance coverage dispute that involves a Texas insurer, an insurer doing business

in Texas, and their contractual relationship with their insured, a company principally operating in

Texas.").  So even though the insured location is in California, Texas law applies to this coverage

dispute because Texas has "a more significant relationship…to the transaction and the parties."  *See*

Restatement § 193; *Zurich Am. Ins. Co.*, 2011 WL 4972025, at *4.[9]

### c. Extrinsic evidence is *not* case determinative and actually favors Chartis Specialty.

Tesoro argues that Chartis Specialty chose a Texas venue solely to get Texas law on

extrinsic evidence, but this is nothing more than a crude attempt to find a basis for Tesoro to allege

forum shopping.  The governing court will make a determination on which law applies regardless of

which venue hears the dispute. A determination of the admissibility is likewise not dependent on

venue, but even the evidence cited by Tesoro is more favorable for Chartis Specialty than Tesoro.

Tesoro points to a binder letter as evidence for its interpretation of the SIR provision, but that same

letter shows that the coverage that Tesoro claims *terminated in 2005*.  Tesoro Ex. D (Aug. 29, 2000

binder letter stating "[t]his policy shall have a $50,000,000 SIR with respect to known conditions at

the site *for a period of 5 years only after which known conditions will be excluded.*") (emphasis

added).  To the extent that Tesoro claims the extrinsic evidence should be considered, it will negate

---

[9] Tesoro overreaches when it says if California law applies, this Court should transfer the case.  This Court can easily apply California law, as it has likely done in the past.  *See AMS Staff Leasing v. Starving Students, Inc.*, 2003 WL 21436476 (N.D. Tex. June 18, 2003) ("Similarly, the fact that California law may apply does not weigh heavily in favor of transfer.  This court, like all federal courts, is experienced in applying the law of other jurisdictions and can certainly do so in a simple breach of contract case."); *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (finding "without merit" the argument that "the Western District of Tennessee is a more convenient venue than the Northern District of Mississippi because 'the application of Tennessee law is integral to this case.").

Tesoro's entire claim for coverage for the pre-existing conditions.  Tesoro points to no other differences between the two venue's law.

 As noted, Chartis Specialty did not make a strained choice of forum, but a natural one—where Tesoro has its headquarters, where the Policy was negotiated and delivered, and where many witnesses and documents are located.

  **4. Factors Four and Six—Litigation in the Western District is not inequitable or inefficient as it will be comprehensive and fast.**

 Tesoro argues its second-filed suit is more comprehensive, but that provides no basis to avoid this Court's jurisdiction.  If the Western District case goes forward, Tesoro's breach of contract claims would be added to this suit as compulsory counterclaims via the Federal Rule of Civil Procedure 13, since they arise out of the same transaction or occurrence.  Fed. R. Civ. Proc. 13; *ICU Med., Inc. v. Rymed Techs., Inc*., CA No. 07-468-JJF, 2008 WL 205307, at *4-5 (D. Del. Jan. 23, 2008) (declining to transfer first-filed action to California despite defendant's argument that the second-filed action implicated issues of California law, and stating that defendant "cannot 'create' a California interest by attaching state law claims to its later-filed declaratory judgment action.").  Further, since this Court decides which of the two cases will proceed, the parties' complete dispute will be litigated in only one forum, instead of piecemeal and duplicative actions. *See Save Power Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir. 1997).

 The only decision that Tesoro cites for its "comprehensive" premise is *Latteena Girls, LLC v. Latina Media Ventures, LLC*, a 2006 unpublished decision cited by no other court.  SA-06-CA-217-RF, 2006 WL 2547884 (W.D. Tex. Aug. 9, 2006).  The facts there are very different because there were multiple letters threatening suit and other evidence that the second-filing party delayed filing because of a purported agreement after a promise by the declaratory plaintiff to cease the allegedly infringing conduct, and there was even a proposed settlement agreement circulated.  The

fact that the second-filed lawsuit was more comprehensive was only a minor factor in making the determination to dismiss the first-filed case filed for improper purposes.

Moreover, court congestion statistics suggest that this Court will likely resolve this dispute quicker than the Northern District of California would.  The Western District of Texas disposes of cases quicker via trial than the Northern District of California (16.1 months versus 30.3 months) and has less backlog (2.5% of civil cases over 3 years versus 7.7%).  App. 0103-0104 (2011 Judicial Caseload Profile).  Because this action would be just as comprehensive and likely more quickly resolved, the equities thus favor keeping this first-filed case here in lieu of proceeding with Tesoro's second-filed action in California.

## IV.      CONCLUSION

In sum, Tesoro's analysis ignores many of the Fifth Circuit's factors and the explicit holdings of more recent cases in an attempt to dismiss Chartis Specialty's first-filed and properly brought declaratory action.  And, as the District with jurisdiction over the first-filed case, this Court should proceed with the action because in a proper analysis none of the factors to be considered by the Court in exercising its discretion weighs in favor of dismissing this action and deferring to the Northern District of California, where Tesoro brought an action only after Chartis Specialty filed this one.  For the same reasons, the Court should deny Tesoro's alternative requests for a stay or transfer.

Respectfully submitted,

Dated: December 12, 2011     **GARDERE WYNNE SEWELL LLP**

By**: _____/s/  David H. Timmins___**
    David H. Timmins, State Bar No. 00785106
    Matthew Schroeder, State Bar No. 00791619
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas  75201
214-999-3000
214-999-4667 – Fax

**Attorneys for Plaintiff**
**Chartis Specialty Insurance Company**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of foregoing was served to the following counsel of record by electronic transmission through the Court's Case Management Electronic Case Filing system to on December 12, 2011.

**_____/s/\_David H. Timmins\_\_\_\_\_**
David H Timmins

Roy T. Atwood
Jones Day
2727 North Harwood Street
Dallas, TX 75201
(214) 220-3939
Fax: 214/969-5100
Email: royatwood@jonesday.com

DALLAS 2284800v.4