IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARTIS SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV. NO. SA-11-CV-00927-DAE |
| vs. | ) | CV. NO. SA-12-CV-00256-DAE |
| | ) | |
| TESORO CORPORATION and | ) | |
| TESORO REFINING AND | ) | |
| MARKETING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART CHARTIS'S
RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIMS OF TESORO
CORPORATION AND TESORO REFINING OR, IN THE ALTERNATIVE,
RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT; (2) GRANTING
IN PART AND DENYING IN PART CHARTIS'S MOTION TO DISMISS
CLAIMS IN FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT
PURSUANT TO RULE 12(e); (3) DENYING CHARTIS'S OPPOSED MOTION
TO BIFURCATE AND STAY EXTRACONTRACTUAL CLAIMS; AND (4)
DENYING TESORO CORPORATION AND TESORO REFINING'S MOTION
FOR ENTRY OF CASE MANAGEMENT ORDER

On March 5, 2013, the Court heard Chartis Specialty Insurance

Company's Rule 12(b)(6) Motion to Dismiss Counterclaims of Tesoro Corporation

and Tesoro Refining or, in the Alternative, Rule 12(e) Motion for More Definite

Statement ("Motion to Dismiss Counterclaims") ("MTD," doc. # 34);[1] Chartis

Specialty Insurance Company's Motion to Dismiss Claims in First Amended

Complaint Pursuant to Rule 12(b)(6) or, in the Alternative, Motion for a More

Definite Statement Pursuant to Rule 12(e) ("Motion to Dismiss California Claims")

(Cv. No. SA-12-CV-00256-DAE, doc. # 29); Chartis Specialty Insurance

Company's Motion to Bifurcate and Stay Extracontractual Claims ("Motion to

Bifurcate") ("Mot. to Bif.," doc. # 32); and Tesoro Corporation and Tesoro

Refining and Marketing Company's Motion for Entry of a Case Management

Order (doc. # 43).  David H. Timmins, Esq., and Scott L. Davis, Esq., appeared at

the hearing on behalf of Chartis Specialty Insurance Company ("Chartis"); Bernard

P. Bell, Esq., and Stoney Vining, Esq., appeared at the hearing on behalf of Tesoro

Corporation ("Tesoro Corporation") and Tesoro Refining and Marketing Company

("Tesoro Refining") (collectively, "the Tesoro parties").  After reviewing the

Motions and the supporting and opposing memoranda, the Court **GRANTS IN**

**PART** and **DENIES IN PART** Chartis's Motion to Dismiss Counterclaims and

Chartis's Motion to Dismiss California Claims, **DENIES** without prejudice

Chartis's Motion to Bifurcate, and **DENIES** without prejudice the Tesoro parties'

---

[1] Citations to the docket will refer to the docket of the lead case, <u>Chartis Specialty Insurance Company v. Tesoro Corporation</u>, Cv. No. SA-11-CV-00927-DAE, unless otherwise indicated.

Motion for Entry of a Case Management Order.

BACKGROUND

I.      Factual Background

Chartis is an insurance company incorporated in Illinois with its principal place of business in New York, New York. ("FAC," Doc. # 33 ¶ 1.) Tesoro Corporation is a San Antonio-based Delaware corporation, and Tesoro Refining is its wholly-owned subsidiary. (FAC ¶ 3; "Counterclaim," Doc. # 37 pp. 11–36 ¶ 16.) This case involves a dispute over liability insurance coverage under a policy issued by Chartis. Two properties owned by Tesoro Refining were insured under the policy: the Golden Eagle Refinery (formerly the Avon Refinery) and Amorco Wharf. ("Policy," MTD Ex. 1 at 3.)

A.      Golden Eagle Refinery

Tesoro Refining has owned and operated the Golden Eagle Refinery ("the Refinery") in Martinez, California since May 17, 2002. (Counterclaim ¶ 5.) The Refinery has had a series of owners since it began operations in 1913, including Texaco, Inc. ("Texaco"), Phillips Petroleum Company ("Phillips"), Tosco Corporation ("Tosco"), and Ultramar Diamond Shamrock Corporation ("Ultramar"). (FAC ¶ 15; Counterclaim ¶¶ 6–9.)

In July 1993, former Refinery owners Texaco and Phillips and then-owner Tosco entered into a Joint Investigation and Remediation Agreement ("Agreement") to perform investigation and remediation work at the Refinery in response to administrative orders issued by the United States Environmental Protection Agency ("EPA") and the California Regional Water Quality Control Board ("Water Board").  (Counterclaim ¶¶ 11–12.)  Under the Agreement, Tosco was responsible for fifty percent of costs incurred as a result of investigation and remediation work, and Phillips and Texaco were each responsible for twenty-five percent of costs incurred.  (Id. ¶ 13.)  The parties allege that, since 1993, Tosco has paid $16,300,000 in remediation costs.  (FAC ¶ 56; "Answer," Doc. # 37 pp. 1–11 ¶ 56.)

In August 2000, Tosco sold the Refinery to Ultramar.  (Counterclaim ¶ 15.)  In the Asset Purchase and Sale Agreement ("APSA"), Tosco indemnified Ultramar for up to $50,000,000 against losses resulting from certain environmental liabilities.  (Counterclaim ¶¶ 16–17; FAC ¶ 33.)  In May 2002, Ultramar sold the Refinery to Tesoro Refining.  (Counterclaim ¶ 29.)  With Tosco's consent, Ultramar assigned to Tesoro Refining certain of its rights and obligations under the APSA, including the provisions governing the indemnity agreement. (Counterclaim ¶ 30.)

B.    <u>The Policy</u>

Chartis (then known as American International Specialty Lines Insurance Company) issued Pollution Legal Liability Select Policy No. PLS 6190132 ("Policy") to Ultramar for a period beginning August 31, 2000 and ending August 31, 2010.  (<u>See</u> Policy at 1.)  The Policy provided that Chartis would "pay Loss on behalf of the Insured that the Insured is legally obligated to pay as a result of Claims . . . made against the Insured and reported to the Company, in writing, during the Policy Period."  (<u>Id.</u> at 1.)  Chartis agreed to pay for, among other things, on-site clean-up costs in excess of the $500,000 deductible.  (<u>Id.</u> at 1–2.)  The Policy also provided for a separate self-insured retention ("SIR") for specified known pollution conditions.  (<u>Id.</u> at End. 4.)  If the Insured incurred clean-up costs or losses as a result of certain scheduled pollution conditions, the Policy would cover only costs and losses in excess of the $50,000,000 SIR.  (<u>Id.</u>)  The Policy provided that the $50,000,000 SIR would be borne by the Insured.  (<u>Id.</u>)  According to the Tesoro parties, the Chartis underwriter who sold the Policy to Ultramar issued a written policy coverage binder to the broker in which he stated: "It is our understanding that Tosco will be responsible for the $50,000,000 [SIR]."  (Counterclaim ¶ 25.)

When Ultramar sold the Refinery to Tesoro Refining in May 2002, Chartis substituted Tesoro Corporation for Ultramar as the Named Insured on the Policy.  (FAC ¶ 9; Counterclaim ¶¶ 29, 34.)  All parties agree that Tesoro Corporation, not Tesoro Refining, was substituted as the Named Insured.  (Answer ¶ 9; FAC ¶ 9.)  Chartis claims that this was at the express request of Tesoro Corporation's insurance broker, Marsh USA Inc.  (FAC ¶ 40.)

C.   The Settlement

In November 2003, Tesoro Refining filed suit in state court against Tosco alleging that Tosco had fraudulently concealed and failed to disclose certain environmental conditions at the Refinery.  (FAC ¶ 63; Counterclaim ¶ 42.)  In December 2003, Tesoro Refining initiated arbitration proceedings against Tosco, "seeking a determination that Tosco was responsible for . . . environmental liabilities arising from pre-2000 operations at the [R]efinery." (Counterclaim ¶ 43.)  Tosco counterclaimed, arguing that Tesoro Refining was responsible for the environmental liabilities and seeking a declaration that the $50,000,000 limit on Tosco's indemnity obligation applied to any liability of Phillips, which operated the Refinery before Tosco.  (FAC ¶ 66; Counterclaim ¶ 47.)  During the pendency of the lawsuit and arbitration, ConocoPhillips, as the legal successor to both Tosco and Phillips, was substituted as the Respondent and Counterclaimant in the

arbitration.  (FAC ¶ 68.)

      In March 2007, Tesoro Refining and ConocoPhillips settled their dispute.  (Counterclaim ¶ 54; FAC ¶ 70.)  Tesoro Refining received $58,500,000, in exchange assuming responsibility for certain environmental liabilities and releasing ConocoPhillips from any claims arising from Tosco's or Phillips's prior ownership of the Refinery.  (Counterclaim ¶ 54; FAC ¶ 70.)

      On February 13, 2007, Tesoro Corporation sent Chartis notice of the lawsuit, arbitration, and Tesoro Corporation's potential liability arising from activities at the Refinery prior to the year 2000.  (FAC ¶ 73; Counterclaim ¶ 67.) On July 18, 2007, Chartis issued a reservation of rights letter to Tesoro Corporation, reserving its rights under the Policy.  (FAC ¶ 77; Counterclaim ¶ 68.) According to Chartis, its claim analyst attempted to call Tesoro Corporation on July 10, 2007 and again in February 2008, April 2008, and June 2008 to determine the status of the arbitration, with no success.  (FAC ¶ 80.)

    C.   The Amorco Wharf

      In July 2004 the Water Board issued an Order requiring Tesoro Refining, ConocoPhillips, and Texaco to undertake investigations at the Amorco Wharf, which revealed the presence of methyl tertiary-butyl ether ("MBTE") in groundwater at the Amorco Wharf.  (Counterclaim ¶¶ 58–59; FAC ¶ 59.)  In

7

January 2007 the Water Board issued an Order requiring Tesoro Refining and

ConocoPhillips to submit remedial investigation work plans to determine the extent

of MBTE pollution at the Amorco Wharf and to implement recommended remedial

actions.  (Counterclaim ¶ 62; FAC ¶ 62.)

        Pursuant to the March 2007 settlement with ConocoPhillips, Tesoro

Refining assumed full responsibility for remediation at Amorco Wharf.

(Counterclaim ¶ 63.)  Tesoro Refining claims that it has spent at least $10,000,000

in clean-up costs on the Amorco Wharf, and alleges that, because the conditions

there are not scheduled pollution conditions under the Policy, Chartis must pay all

costs in excess of the Policy's general $500,000 deductible.  (Counterclaim

¶¶ 64–65.)

       D.   <u>Tesoro Corporation's Coverage Demand</u>

        On October 8, 2009, Tesoro Corporation sent Chartis a letter notifying

Chartis of the terms of the settlement and demanding coverage.  (FAC ¶¶ 81–85;

Counterclaim ¶ 69.)  Specifically, Tesoro Corporation stated that covered

environmental liabilities had exceeded or would exceed the applicable deductibles

and/or the SIR, and demanded that Chartis agree to reimburse Tesoro Corporation.

(FAC ¶¶ 81, 85; Counterclaim ¶ 69.)  On October 15, 2009, Chartis acknowledged

receipt of Tesoro Corporation's demand and stated that it would begin an investigation.  (FAC ¶ 86.)

In July and August 2010, Tesoro Corporation "reiterated their demand for coverage," notified Chartis of additional costs incurred at the Amorco Terminal, and stated that clean-up costs totaled more than $69,000,000, thereby exceeding the $50,000,000 SIR.  (Counterclaim ¶¶ 71–72.)  According to Chartis, the $69,000,000 figure cited by Tesoro Corporation included the $16,300,000 paid by Tosco since 1993, as well as the $58,500,000 Tesoro Refining received from ConocoPhillips.  (FAC ¶¶ 88, 105.)  Between November 2010 and November 2011, Tesoro Corporation provided Chartis with documentation supporting its claims and the parties attempted to "resolve the coverage issues under the Policy." (FAC ¶¶ 93–96; Counterclaim ¶ 85.)  Unable to reach a resolution, on November 7, 2011 Chartis filed this lawsuit.  (Doc. # 1.)

## II.   Procedural Background

Chartis's original Complaint in the instant action, filed November 7, 2011, named only Tesoro Corporation as a defendant and sought the following declarations: that Tesoro Corporation has not yet satisfied the Policy's SIR; that remediation costs not otherwise covered by the Policy do not satisfy the SIR; that amounts Tesoro Corporation received from ConocoPhillips in the 2007 settlement

do not satisfy the SIR; that remediation costs paid by Tosco or ConocoPhillips
under their Joint Investigation and Remediation Agreement do not satisfy the SIR;
and that Chartis has no obligation to pay until Tesoro Corporation has satisfied the
SIR separate and apart from the amounts recovered from ConocoPhillips.  (Doc.
# 1 ¶ 50.)

On November 29, 2011, Tesoro Corporation and Tesoro Refining
filed a complaint against Chartis in the United States District Court for the
Northern District of California ("the California action").  See Tesoro Corp., et al. v.
Chartis Specialty Ins. Co., No. 4:11-cv-05718-PJH (N.D. Cal. Nov. 29, 2011).  The
complaint included claims for breach of contract, breach of the implied covenant of
good faith and fair dealing, and declaratory relief.  (Cv. No.
SA-12-CV-00256-DAE, Doc. # 1.)  On November 30, 2011, Tesoro Corporation
filed in the original action (Cv. No. SA-11-CV-00927-DAE) a Motion to Dismiss,
Stay or Transfer the Proceedings to the United States District Court for the
Northern District of California.  (Doc. # 8.)

On December 21, 2011, Chartis filed in the California action a Motion
to Dismiss, Transfer or Stay.  (Cv. No. SA-12-CV-00256-DAE, Doc. # 14.)  On
January 14, 2012, Tesoro Corporation and Tesoro Refining filed a First Amended
Complaint against Chartis.  (Cv. No. SA-12-CV-00256-DAE, Doc. # 19.)  On

January 18, 2012,  Chartis filed in the California action the Motion to Dismiss California Claims currently before this Court.  (Cv. No. SA-12-CV-00256-DAE, Doc. # 29.)

On March 2, 2012, United States District Judge Phyllis J. Hamilton granted Chartis's Motion to Dismiss, Transfer or Stay the Action (Cv. No. SA-12-CV-00256-DAE, doc. # 14), concluding that the California action should be transferred to the United States District Court for the Western District of Texas pursuant to the first-to-file rule (Cv. No. SA-12-CV-00256-DAE, doc. # 36 at 1). Accordingly, on March 19, 2012, the California action was transferred to this Court.  (Cv. No. SA-12-CV-00256-DAE, Doc. # 37.)

On May 21, 2012, the Court denied Tesoro Corporation's Motion to Dismiss, Stay or Transfer the Proceedings and ordered that the case transferred from the Northern District of California (Cv. No. SA-12-CV-00256-DAE) be consolidated with the instant action.  (Doc. # 27 at 2.)  The Court also ordered that the consolidated action be stayed for a period of sixty days while the parties engaged in mediation.  (Id.)  Finally, the Court advised the parties that, if they believed it would be appropriate to bifurcate the extra-contractual claims until the coverage issues were resolved, they should file a motion for such relief upon the expiration of the sixty-day mediation period.  (Id.)

11

On July 27, 2012, the parties filed a Joint Advisory on Mediation, advising the Court that they were unable to resolve their claims through mediation. (Doc. # 30.)  On August 10, 2012, Tesoro Corporation filed an Answer (doc. # 31) to Chartis's Complaint (doc. # 1), denying that Chartis is entitled to relief and asserting a number of affirmative defenses (doc. # 31 at 4–5).  Tesoro Corporation and Tesoro Refining also asserted Counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, contract reformation, and declaratory relief.  (Id. at 21–30).

On August 31, 2012, Chartis filed a First Amended Complaint ("FAC"), naming Tesoro Refining as a defendant and seeking, in addition to the declarations sought in the original complaint, declarations that: Tesoro Refining is not a Named Insured on the Policy and is not entitled to coverage under the Policy; Tesoro Corporation is not entitled to coverage under the Policy because it has not paid any clean-up costs and has not incurred any legal obligation to pay for any such costs; in the alternative, any coverage for known pollution conditions terminated in 2005; the Tesoro parties are not entitled to coverage because Tesoro Refining's settlement with Tosco and ConocoPhillips violated the Policy; the Tesoro parties are not entitled to clean-up costs resulting from Tesoro Refining's assumption of liability under the settlement because the Policy excludes coverage

for such costs; the Tesoro parties are not entitled to coverage because they violated the Policy's requirement that they provide notice of pollution conditions as soon as practicable; and certain of the costs incurred in connection with the remediation of the Refinery and/or Amorco Wharf are not covered because they do not qualify as clean-up costs.  (FAC ¶ 115.)

Also on August 31, 2012, Chartis filed the Motion to Bifurcate (doc. # 32) and the Motion to Dismiss Counterclaims (doc. # 34) currently before the Court.  On September 10, 2012, the Tesoro parties filed a Response in Opposition to the Motion to Bifurcate (doc. # 35), and on September 17, 2012, the Tesoro parties filed a Response in Opposition to the Motion to Dismiss Counterclaims (doc. # 38).  On September 17, 2012, the Tesoro parties filed an Answer and Counterclaims to the FAC.  (Doc. # 37.)

On October 9, 2012, the Tesoro parties filed the Motion for Entry of a Case Management Order currently before the Court (doc. # 43), to which Chartis filed a Response in Opposition on October 16, 2012 (doc. # 44).  On January 9, 2013, the case was reassigned to this Court.  (Doc. # 46.)

<u>STANDARDS OF REVIEW</u>

I.      <u>Motion to Dismiss</u>

        Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  Review

is limited to the contents of the complaint and matters properly subject to judicial

notice.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts

'all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'"  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007)

(quoting <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464,

467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

        A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555–56.  In providing grounds for

relief, however, a plaintiff must do more than recite the formulaic elements of a

14

cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## II.  Motion for a More Definite Statement

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading stating a claim for relief contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under [Federal Rule of Civil Procedure] 12(e) before responding."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

The pleading standard set out in Rule 8(a) is a liberal one, and does not require a plaintiff to plead with specificity the facts giving rise to his or her claim.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (noting that under Rule 8(a)'s notice pleading standard, "[s]pecific facts are not necessary").  As a result, Rule 12(e) motions are generally disfavored and are used "to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail."  Davenport v. Rodriguez, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001); see also Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959) ("In view of the great liberality of [Federal Rule of Civil Procedure 8], permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which

under Rule 8 is sufficient to withstand a motion to dismiss.").  Thus, a motion for a more definite statement will be granted only when a pleading is so "barren of specifics," United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 690 n.15 (1973), the opposing party is unable to respond.

III.    Motion to Bifurcate

Pursuant to Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  "A motion to bifurcate is a matter within the sole discretion of the trial court, and [the Fifth Circuit] will not reverse the court's decision absent an abuse of that discretion."  First Tex. Sav. Ass'n v. Reliance Ins. Co., 950 F.2d 1171, 1174 n.2 (5th Cir. 1992) (citing Gonzales-Marin v. Equitable Life Assurance Soc'y, 845 F.2d 1140, 1145 (1st Cir. 1992)). However, "[s]eparation of issues . . . is not the usual course that should be followed," McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 304 (5th Cir. 1993), and "[t]he burden is on the party seeking separate trials to prove that separation is necessary."  Crompton Greaves, Ltd. v. Shippers Stevedoring Co., 776 F. Supp. 2d 375, 402 (S.D. Tex. 2011) (internal quotation marks omitted) (quoting 9A Wright & Miller § 2388).

<u>DISCUSSION</u>

I.      <u>Motion to Dismiss Counterclaims and Motion to Dismiss California Claims</u>

A close examination of the Tesoro parties' First Amended Complaint (Cv. No. SA-12-CV-00256-DAE, doc. # 19) in the California action and their First Amended Counterclaim in the instant case (doc. # 37) reveal that they are virtually identical. In each pleading, Tesoro Corporation and Tesoro Refining assert the same six causes of action in nearly identical language. Likewise, Chartis's Motion to Dismiss Counterclaims (doc. # 34) and Motion to Dismiss California Claims (Cv. No. SA-12-CV-00256-DAE, doc. # 29) assert the same arguments for dismissal of the Tesoro parties' claims. Thus, while the Court will primarily address Chartis's Motion to Dismiss Counterclaims and the supporting and opposing memoranda, the Court's ruling will apply to both motions.

Chartis advances three arguments for dismissal of Tesoro Corporation's counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing and the Tesoro parties' counterclaim for contract reformation: (1) Tesoro Corporation admits that it has no legal obligation to pay remedial costs and has not in fact paid any remedial costs, and thus has failed to allege essential elements of a claim for breach of contract; (2) in the absence of a breach of contract, Tesoro Corporation's claim for breach of the

18

implied covenant of good faith and fair dealing fails; and (3) the Tesoro parties' contract reformation claim is barred by the statute of limitations.  Alternatively, Chartis moves the Court to order the Tesoro parties to amend the Counterclaim pursuant to Federal Rule of Civil Procedure 12(e) in order to clarify which entity makes the various allegations in the Counterclaim.  (MTD at 2.)

   The Tesoro parties contend that Chartis's Motion to Dismiss should be denied.  (See Doc. # 38.)  However, they also assert that before the Court may reach the merits of Chartis's Motion, the Court must first engage in a choice-of-law analysis to determine whether Texas or California law will govern these consolidated cases.  (Doc. # 38 at 1.)  Thus, as a preliminary matter, the Court will address the choice-of-law question.

  A. <u>Choice of Law</u>

   A federal district court sitting in diversity must apply the substantive law of the forum state, including the forum state's choice-of-law rules.  <u>Lockwood Corp. v. Black</u>, 669 F.2d 324, 327 (5th Cir. 1982).  The Supreme Court has held that when a diversity case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the law of the state from which the case was transferred.  <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964) ("[I]n cases such as the present, where the defendants seek transfer, the transferee district court must be

19

obligated to apply the state law that would have been applied if there had been no change of venue."); see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1141 (5th Cir. 1992) ("[A] section 1404(a) transfer does not change the law applicable, regardless of who initiates the transfer.").  The Tesoro parties maintain that pursuant to the Van Dusen rule, the Court must apply California's choice-of-law rules in the member case (Cv. No. SA-12-CV-00256-DAE) transferred to this Court from the Northern District of California.  (Doc. # 38 at 5 n.5.)  As a result, the Tesoro parties urge the Court to find that California law governs both consolidated cases.

The Tesoro parties jump too quickly to the conclusion that the Van Dusen rule applies when a case is transferred pursuant to the first-to-file rule. They acknowledge that the Fifth Circuit has not directly addressed this particular issue.  (Doc. # 38 at 5 n.5.)  The Fifth Circuit case most factually analogous to the one before the Court is Bott v. American Hydrocarbon Corporation, in which the Fifth Circuit held that Van Dusen applied where a second-filed case was transferred at the court's own suggestion, with the concurrence of the defendant and without objection from the plaintiff, to Texas, where a first-filed action was pending.  441 F.2d 896, 898, 899 (5th Cir. 1971).  However, subsequent Fifth Circuit rulings have characterized the transfer in Bott as a § 1404(a) transfer, see

20

Ellis v. Great Sw. Corp., 646 F.2d 1099, 1108 n.9 (5th Cir. Apr. 1981), and have emphasized the fact that the plaintiff acquiesced in the transfer, see Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 991 n.14 (Former 5th Cir. 1982) ("[I]n this Circuit Van Dusen governs when the court transfers a case on its own motion with the agreement of the plaintiff. . . .") (quoting Bott, 441 F.2d at 899).  In this case, the California action was not transferred pursuant to § 1404(a) (doc. # 36), and the plaintiffs in that action (Tesoro Corporation and Tesoro Refining) objected to the transfer (see Cv. No. SA-12-CV-00256-DAE, doc. # 21).

   In other cases, the Fifth Circuit has interpreted the Van Dusen rule as being fairly limited in scope, holding that when a case is transferred because of improper venue or because the transferor court lacked personal jurisdiction over the defendant, the transferee court must apply the choice of law rules of the state in which it sits.  Ellis, 646 F.2d at 1110–11 (5th Cir. 1981) ("The result of our holding will be to ensure that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed.") (internal quotation marks omitted) (quoting Van Dusen, 376 U.S. at 638); see also Tel-Phonic Servs., Inc., 975 F.2d at 1141 (noting that the holding in Van

21

Dusen "addresses only matters transferred under § 1404(a)"). And under circumstances similar to those present here, the Fourth Circuit observed that it was "not at all sure that the Van Dusen precedent should be blindly and mechanically applied." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 600 (4th Cir. 2004). In short, this "thorny issue" is not as easily resolved as the Tesoro parties seem to suggest. Id.

Indeed, even if the Court were to assume that California law governs the action transferred to this Court from the Northern District of California, that would not automatically compel the conclusion that California law applies to both consolidated cases. "[C]onsolidation of cases . . . does not strip the cases of their individual identities," Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (5th Cir. 1998), and the law is well-settled that when sitting in diversity the Court typically applies the law of the forum state, which, in the first-filed case, is Texas, Lockwood, 669 F.2d at 327 ("The clear command of Erie v. Tompkins, 304 U.S. 64 (1938) is that federal courts must apply the substantive law of the forum state in diversity of citizenship actions."). However, where, as here, the two cases are mirror images, the Court may not try them "under two sets of laws if to do so would produce differing results." Bott, 441 F.2d at 899. In that situation, the Court must make a choice of law. Id.; see also Volvo Constr., 386

F.3d at 600 (holding that where applying Arkansas law to the Arkansas claims and North Carolina law to the North Carolina counterclaims could in theory lead to different results on identical claims, "the choice-of-law rules of only one state should be applied").

          In its Reply, Chartis points out that the Tesoro parties "never identify a conflict between California or Texas law that would affect the pending motion to dismiss."  (Doc. # 42 at 3.)  Chartis "agrees that some of the issues in this case will require a choice-of-law analysis," but maintains that "the issues raised in Chartis's motion to dismiss do not fall into that category."  (Id. at 3 n.2.)  "Where there are no differences between the relevant substantive laws of the respective states, there is not conflict, and a court need not undertake a choice of law analysis."  R.R. Mgmt. Co. v. CFS La. Midstream Co., 428 F.3d 214, 222 (5th Cir. 2005); see also Schneider Nat'l Transp. v. Ford Motor Co., 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.") (quoting W.R. Grace & Co. v. Cont'l Cas. Co., 896 F.2d 865, 874 (5th Cir. 1990)); Hoffman v. L & M Arts, 774 F.Supp.2d 826, 846 (N.D. Tex. 2011) ("Without relevant differences in the substantive laws, the court need not undertake a choice of law analysis.").

The Court agrees that it need not conduct a choice-of-law analysis in order to address the issues raised in Chartis's Motion to Dismiss. Chartis advances two substantive arguments for dismissal of the Tesoro parties' Counterclaims: (1) Tesoro Corporation fails to state a claim for breach of contract and thus fails to state a claim for breach of the implied covenant of good faith and fair dealing, and (2) the Tesoro parties' contract reformation claim is barred by the statute of limitations. With respect to Chartis's first argument, the Court can discern no conflict between the relevant law governing breach of contract in Texas and California. Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App. 1997). The elements of a breach of contract claim are identical under California law. See First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (Cal. Ct. App. 2001) ("[T]he elements of the cause of action are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages.").

Similarly, under both Texas and California law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist absent a breach of

contract.  See San Diego Hous. Comm'n v. Indus. Indem. Co., 68 Cal. App. 4th

526, 544 (Cal. Ct. App. 1998) ("Where a breach of contract cannot be shown, there

is no basis for a finding of breach of the covenant [of good faith and fair

dealing]."); Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995) ("As a

general rule there can be no claim for bad faith when an insurer has promptly

denied a claim that is in fact not covered.").  The Texas Supreme Court has not

ruled out the possibility that "an insurer's denial of a claim it was not obliged to

pay might nevertheless be in bad faith if its conduct were 'extreme' and produced

damages unrelated to and independent of the policy claim."  Am. Motorists Ins.

Co. v. Fodge, 63 S.W.3d 801, 804 (Tex. 2001) (quoting Stoker, 903 S.W.2d at

341).  However, as discussed below, this exception does not apply in this case, so

there is no conflict between the relevant laws of the two states.

    With respect to Chartis's argument that the Tesoro parties' contract

reformation claim is time-barred, there is a conflict between the substantive law in

the two jurisdictions.  Under Texas law, a four-year statute of limitations applies to

contract reformation claims, see Tex. Civ. Prac. & Rem. Code § 16.051, while in

California, a three-year statute of limitations applies to a claim for reformation

based on fraud or mistake, see N. Star Reinsur. Corp. v. Superior Court, 10 Cal.

App. 4th 1815, 1818 (Cal. Ct. App. 1992).  However, as discussed in more detail

below, the Court at this stage of the proceedings declines to dismiss the Tesoro parties' reformation claim as time-barred under either limitations period because federal pleading requirements do not require a plaintiff to allege that his claims are not barred by the relevant statute of limitations.  See Frame v. City of Arlington, 657 F.3d 215, 239 (5th Cir. 2011).  Thus, under Texas or California law the result is the same.

Because no conflicts in the relevant law would lead to differing results, the Court need not conduct a choice-of-law analysis in order to address Chartis's motions, and will apply the law of the forum state, Texas.  Schneider, 280 F.3d at 536 (holding that the law of the forum state applies where there is no conflict between the substantive state laws of the interested jurisdictions).  However, the Court agrees with both parties that many of the issues in this case cannot be resolved without engaging in a choice-of-law analysis.

B.   Tesoro Corporation's Failure to State a Breach of Contract Claim

The fundamental issue in Chartis's Motion to Dismiss Counterclaims and Motion to Dismiss California Claims is whether Tesoro Corporation may pursue claims for losses Chartis argues were suffered only by Tesoro Corporation's subsidiary, Tesoro Refining.  Chartis contends that a parent corporation may not

pursue claims on behalf of its subsidiary, and asks the Court to dismiss any claims brought by Tesoro Corporation on Tesoro Refining's behalf.

Specifically, Chartis advances two arguments for dismissal of Tesoro Corporation's breach of contract counterclaim.  First, Chartis asserts that Tesoro Corporation "concedes that it does not have a legal obligation under Environmental Laws and has not paid any remediation costs at the Refinery," and thus has failed to allege that any breach occurred.  (MTD at 7.)  Second, Chartis asserts that Tesoro Corporation fails to allege that it has suffered any damages, since the only damages alleged in the Tesoro parties' Counterclaim were suffered by Tesoro Refining.  (MTD at 7–8.)

1.    Breach

In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract, performance by the plaintiff, a breach by the defendant, and damages.  See Wright, 950 S.W.2d at 412.  Chartis contends that Tesoro Corporation fails to allege that the latter was "legally obligated" to incur remediation costs, and thus fails to allege that Chartis breached its obligations under the Policy by refusing Tesoro Corporation coverage under the policy.

27

The Policy provides:[2] "The Company agrees to pay Loss on behalf of the Insured on, under or beyond the boundaries of the Insured Property caused by Pollution Conditions, that the Insured becomes <u>legally obligated</u> to pay as a result of Claims made against the Insured."  (Policy at End. 9 (emphasis added).)  Thus, Chartis is obligated under the Policy to pay only those claims Tesoro Corporation (the Insured) was legally obligated to pay.  According to Chartis, the Counterclaim's allegations "make clear that it was Tesoro Refining, not Tesoro Corporation, that was subject to the legal obligations required by the Policy. . . ."  (MTD at 9.)  Specifically, Chartis argues that "Tesoro Refining alleges that it was the entity named in regulatory orders, and it was therefore the entity liable under Environmental Laws. . . ."  (MTD at 9.)

In response, Tesoro Corporation fails to cite to any specific factual allegations in the Counterclaim indicating that it, rather than Tesoro Refining, was legally obligated to pay for loss caused by pollution conditions.[3]  As Chartis points

_____

[2] The Court may consider the Policy for purposes of this Motion to Dismiss because the Policy is attached to the Motion to Dismiss, referred to in the FAC and the Counterclaim, and is central to the Tesoro parties' Counterclaim.  <u>See</u> <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007).

[3] The only allegation Tesoro Corporation points to as establishing breach (doc. # 38 at 9) states: "Defendant [Chartis] has breached its obligations under the Policy by failing and refusing to pay Clean-Up Costs or Losses resulting from scheduled pollution conditions on, under or beyond the Refinery in excess of the

out, it appears that the only factual allegations in the Counterclaim regarding a

legal obligation to pay clean-up costs refer to Tesoro <u>Refining's</u> legal obligation.

(<u>See, e.g.</u>, Answer ¶ 18 ("Tesoro Refining remains legally obligated to pay

additional Clean-Up Costs, as defined in the Policy, for its remediation efforts at

the Amorco Terminal. . . ."); Counterclaim ¶ 53 ("As a result of government orders

. . . , Tesoro Refining has become legally obligated to pay Clean-Up Costs, as

defined in the Policy.").

      Indeed, even Tesoro Corporation admits that it "does not aver that it

has independent liability" for environmental conditions at the Refinery or other

properties owned by Tesoro Refining, but contends that "there is no guarantee that

the government will not pursue direct liability."  (Doc. # 38 at 12.)  In other words,

Tesoro Corporation appears to posit that, as Tesoro Refining's parent, it may be

held liable in the future for the legal obligations of the subsidiary.  This contention

is, as Chartis points out, at odds with the general principle of corporate law that a

parent corporation is not liable for the acts of its subsidiaries.  <u>See</u> <u>Bridas</u>

<u>S.A.P.I.C. v. Gov't of Turkmenistan</u>, 447 F.3d 411, 416 (5th Cir. 2006) ("A

---

applicable retention."  (Counterclaim ¶ 96.)  This is merely a formulaic recitation
of one of the elements of a claim for breach of contract—breach—and the Court
need not accept as true "a legal conclusion couched as a factual allegation."  <u>Iqbal</u>,
556 U.S. at 678.

bedrock principle of corporate law is that 'a parent corporation . . . is not liable' for actions taken by its subsidiaries.") (quoting United States v. Bestfoods, 524 U.S. 51, 61 (1998)).  To support its argument, Tesoro Corporation observes that the Supreme Court held in Bestfoods that a parent corporation may face environmental liability for the acts of its subsidiary when the corporate veil is pierced, or when the parent itself operated the polluting facility.  524 U.S. at 63–66.  However, Tesoro Corporation does not argue that it operated the Refinery or that the corporate veil ought to be pierced, and in any event, facing possible liability in the future cannot be equated with a legal obligation to pay the costs already incurred, which the Policy seems to require.  Tesoro Corporation's allegations that it may face liability amount to mere speculation.

Without any factual allegations that Tesoro Corporation itself is legally obligated to pay clean-up costs, and absent any plausible legal theory under which it could be held liable for the legal obligations of its subsidiary, the Court cannot reasonably infer that Chartis's refusal to pay Tesoro Corporation constituted a breach of Chartis's obligations under the Policy.  See Ashcroft, 556 U.S. at 678 (holding that a "plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  The Court concludes that Tesoro Corporation has failed to

adequately allege that Chartis breached the contract.

        2.   <u>Damages</u>

        Since the Counterclaim fails to allege that Chartis breached its obligations under the Policy, Tesoro Corporation fails to state a breach of contract claim even if the Counterclaim adequately alleges damages.  In fact, in the absence of a breach by Chartis, it is impossible for Tesoro Corporation to allege <u>any</u> facts that would allow the Court to reasonably infer that it suffered damages as a result of Chartis's breach.  <u>See</u> Ann. Cal. Civ. Code § 3300 ("For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby. . . ."); <u>Thomas v. Barton Lodge II, Ltd.</u>, 174 F.3d 636, 648 (5th Cir. 1999) ("Under Texas law, '[t]he general principle of damages is compensation to plaintiff for his actual loss resulting from defendant's wrong.'") (quoting <u>McClung Cotton Co., Inc. v. Cotton Concentration Co.</u>, 479 S.W.2d 733, 737 (Tex. Civ. App. 1972)); <u>Gautier v. General Tel. Co.</u>, 234 Cal. App. 2d 302, 306 (Cal. Ct. App. 1965) (noting that damages for breach of contract are the amount required to compensate the plaintiff for the injury caused by the breach).

        In any event, the Court notes that the cases Tesoro Corporation cites in support of its argument that a parent company can recover damages for losses

suffered by a subsidiary are inapposite.  First, <u>R&R Sails, Inc. v. Insurance Company of State of Pennsylvania</u>, 610 F. Supp. 2d 1222 (S.D. Cal. 2009) does not stand for the proposition, as Tesoro Corporation claims, that a parent corporation may sue for damages sustained solely by a subsidiary.  (Doc. # 38 at 10.)  In that case, the court held that a plaintiff had standing to maintain a breach of contract claim against the defendant-insurer, despite the fact that the insured property was leased to the plaintiff's subsidiary at the time the damages were incurred.  <u>R&R Sails</u>, 610 F. Supp. 2d at 1227.  Here, Chartis does not dispute that Tesoro Corporation has <u>standing</u> to bring a breach of contract claim; rather, Chartis maintains that Tesoro Corporation cannot successfully state a claim for breach of contract because it incurred no legal obligation as required to trigger payment under the Policy, and consequently has suffered no damages.

Nor is <u>National Union Fire Insurance Company of Pittsburgh v. Anderson-Prichard Oil Corporation</u>, 141 F.2d 443 (10th Cir. 1944) on point.  In that case, an insurance policy provided business interruption coverage for the operations of a refinery.  <u>Anderson-Prichard</u>, 141 F.2d at 445.  A parent oil corporation and two subsidiaries, one of which owned and operated a refinery and one of which owned and operated a pipeline, were all insured under the policy.  <u>Id.</u> Because the operations of the two subsidiaries were "largely interrelated and

32

interdependent" and the pipeline was an "integral part of the complete refinery," the court treated the business of the two subsidiaries "as an integrated whole for the purpose of computing the actual loss sustained under the policy." Id. at 446. Anderson-Prichard did not, however, "affirm[] that the parent can suffer damage under an insurance policy even where its subsidiary owns and operates the insured refinery," as Tesoro Corporation contends. (Doc. # 38 at 11.) In fact, the court in Anderson-Prichard noted that the parent corporation was "interested [in the loss sustained under the policy] only as a holding company for the two operating companies, and its interest in the recovery [was] governed accordingly." Anderson-Prichard, 141 F.2d at 446. The court's discussion of the "business as an integrated whole" was not, therefore, meant to suggest that the parent corporation shared in its subsidiaries' losses equally by virtue of the parent-subsidiary relationship; on the contrary, the parent corporation could recover only "as [its] interest . . . appear[ed]." Id. at 444.

C.     The Tesoro Parties' Failure to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

        The Tesoro parties assert a claim for breach of the implied covenant of good faith and fair dealing, alleging that Chartis has engaged "in a course of conduct wrongfully and vexatiously to refuse to provide insurance coverage due

and owing to Tesoro."  (Counterclaim ¶ 122.)  Specifically, the Counterclaim alleges that Chartis has, among other things, decided to repudiate its obligations under the Policy; consciously failed to conduct a reasonable and thorough investigation of the facts and claims in violation of accepted industry custom, practice and standards; in the midst of good faith settlement negotiations, refused to respond to the Tesoro parties' reasonable requests for information; and engaged in a pattern of delay and evasiveness while manufacturing reasons to deny the Tesoro parties coverage under the Policy.  (Id.)

In general, a claim for breach of the implied covenant of good faith and fair dealing cannot exist absent a breach of contract.  See Stoker, 903 S.W.2d at 341.  This rule "is in accord with the policy in which the duty of good faith is rooted.  The covenant of good faith and fair dealing is implied in law to assure that a contracting party 'refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement.'"  Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1153 (Cal. Ct. App. 1990) (quoting Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 818 (Cal. 1979)).  Thus, where the plaintiff has no right to receive benefits under the contract, there can be no breach of the implied covenant of good faith.

In Stoker, the Texas Supreme Court "[did] not exclude . . . the possibility" that in denying a claim, an insurer could commit an act so extreme it

34

caused injury independent of the denial of the claim.  903 S.W.2d at 341.

However, the Texas Supreme Court provided no examples of acts sufficiently

"extreme" as to be actionable, <u>Am. Motorists Ins. Co.</u>, 63 S.W.3d at 804, and "in

seventeen years since the decision appeared, no Texas court has yet held that

recovery is available for an insurer's extreme act, causing injury independent of the

policy claim. . . ."  <u>See</u> <u>Mid-Continent Cas. Co. v. Eland Energy, Inc.</u>, --- F.3d ---,

2013 WL 656631, at *5 (5th Cir. Feb. 22, 2013).  The Court thus has little to guide

it in determining what type of "extreme" conduct may give rise to a claim for bad

faith absent a breach of contract.  In any event, the Counterclaim does not allege

that Chartis committed any acts so extreme as to cause Tesoro Corporation some

injury separate and apart from the denial of coverage under the Policy.  The Court

concludes that Tesoro Corporation has failed to state a bad faith claim upon which

relief can be granted.

> D.    <u>The Tesoro Parties' Failure to State a Reformation Claim</u>

The Tesoro parties' contract reformation claim alleges that Tesoro

Refining should have been made a named insured under the Policy, and the parties'

failure to do so upon formation of the contract was a result of mutual or unilateral

mistake.  (<u>See</u> Counterclaim ¶¶ 131–139.)  Chartis argues that this claim ought to

be dismissed as untimely.

Under Texas law, a four-year statute of limitations applies to contract reformation claims.  See Tex. Civ. Prac. & Rem. Code § 16.051; Poag v. Flories, 317 S.W.3d 820, 826 (Tex. App. 2010) (applying a four-year statute of limitations to a suit for reformation).  "The four-year statute of limitations does not begin to run until the cause of action was discovered or, by reasonable diligence, should have been discovered."  Henderson v. Henderson, 694 S.W.2d 31, 36 (Tex. App. 1985).[4]  When a mistake should have been discovered is a question of fact.  Id.

Chartis argues that under any statute of limitations, the Tesoro parties' reformation claim is time-barred, because the alleged mistake was made in May 2002 – more than nine years before the Tesoro parties filed suit – when Ultramar sold the Refinery to Tesoro Refining and Chartis substituted Tesoro Corporation for Ultramar as the Named Insured on the Policy.  Chartis maintains that a sophisticated party like Tesoro Corporation should have immediately appreciated the fact that the wrong entity was named, particularly since the alleged mistake was readily apparent on the face of the Policy.  It is therefore untenable, according to Chartis, for the Tesoro parties to argue that the mistake was only recently discovered, and their failure to allege "that they discovered the mistake within the

---

[4] Similarly, under California law, "[t]he cause of action . . . is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Ann. Cal. Code Civ. Proc. § 338(d).

limitations period" and failure to explain "why it could not have been discovered

sooner through the exercise of due diligence" warrants dismissal.  (MTD at 15.)

The Tesoro parties argue that their failure to seek reformation

immediately stemmed not from a lack of diligence but from a mistaken belief that

the wholly owned subsidiary of the Named Insured would be covered by the

Policy.  (Doc. # 38 at 4.)  The Tesoro parties point out that Chartis's standard

Pollution Legal Liability Select Policy[5] defines Named Insured to include wholly

owned subsidiaries, and although the Policy Chartis issued to Ultramar contained a

different and "unorthodox" definition, it was "deep in the fine print, not on the face

of the endorsement."  (Doc. # 38 at 17–18.)

Moreover, according to the Tesoro parties, until December 2011 they

"had no reason to believe that [Chartis] would argue . . . that the Policy did not

cover the owner of the Refinery. . . ."  (Id. at 4.)  The Tesoro parties argue that it

would have been absurd for them to enter into a contract in which Tesoro

Corporation was the only entity insured, but had no right to collect because it was

not the owner of the Refinery and had no liability at the site.  A contract that

provided no coverage would be illusory.  Thus, according to the Tesoro parties, it

---

[5]  The standard Pollution Legal Liability Select Policy can be found at
http://www.chartisinsurance.com/ncglobalweb/internet/US/en/files/PLL%20Select
%20specimen%20policy_tcm295-227110.pdf.

was clearly the contracting parties' intention that the owner of the Refinery be

covered by the Policy.  The Tesoro parties claim that under Texas law, an insured

has a right to assume that an insurer has drafted a Policy according to the parties'

intent.  (Id. at 18 (citing to Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 200

(5th Cir. 1993) (observing that under Texas law, the insured's failure to read the

policy does not bar correction of a mistake, because the insured has a right "to rely

upon the assumption that the agreement was expressed in the writing")).)

Accordingly, the Tesoro parties had the right to assume that the Policy provided

coverage to the owner of the Refinery, Tesoro Refining.

        Under federal law, which governs the pleading requirements of a case

in federal court, see TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir.

2008), the statute of limitations is an affirmative defense, and the burden of proof

is on the party pleading it, F.T.C. v. Nat'l Bus. Consultants, Inc., 376 F.3d 317,

322 (5th Cir. 2004).  A plaintiff is not, therefore, "required to allege that his claims

were within the applicable statute of limitations."  Frame v. City of Arlington, 657

F.3d 215, 239 (5th Cir. 2011).  At the motion to dismiss phase, a complaint should

not be dismissed on the basis of the statute of limitations unless the complaint

affirmatively demonstrates that the plaintiff's claims are time-barred.  Id.

At this stage, the Court cannot determine as a matter of law that the Texas or California limitations period bars the Tesoro parties' reformation claim. The pleadings do not affirmatively demonstrate that they were aware of the facts constituting the mistake more than three or four years before they filed their Counterclaim.  Determining when a mistake should have been discovered through reasonable diligence is a fact-intensive inquiry.  See Transport Ins. Co. v. TIG Ins. Co., 202 Cal. App. 4th 984, 1012 (Cal. Ct. App. 2012) ("[W]e are hard pressed to think of [a] more fact-specific issue[] than 'accrual' . . . 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge.'") (quoting United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 597 (Cal. 1970)); Henderson, 694 S.W.at 36.  The Court thus concludes that this is an issue best resolved through discovery and summary judgment or trial.  See Frame, 657 F.3d at 240.

In sum, for all the reasons set forth above, the Court **GRANTS** the Motion to Dismiss Counterclaims and Motion to Dismiss California Claims with respect to Tesoro Corporation's breach of contract and bad faith claims.  The Court **DENIES** both motions with respect to the Tesoro parties' contract reformation claim.

E.     <u>Leave to Amend</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he Court should freely give leave [to amend] when justice so requires."  The Fifth Circuit has stated that "leave to amend is to be granted liberally unless . . . amendment would be futile."  <u>Jebaco, Inc. v. Harrah's Operating Co., Inc.</u>, 587 F.3d 314, 322 (5th Cir. 2009).  Here, the Court concludes that amendment would be futile.  A "legal obligation" to pay clean-up costs is a prerequisite to coverage under the Policy.  Tesoro Corporation acknowledges that it does not have a legal obligation to pay clean-up costs.  (Doc. #38 at 12 (admitting that it "does not aver that it has independent liability" for environmental conditions at the Refinery).)  Thus, Teosoro Corporation cannot plead any facts that would allow the Court to reasonably infer that Chartis breached its obligations under the Policy by refusing to pay Tesoro Corporation.  Accordingly, Tesoro Corporation is denied leave amend.

II.     <u>Alternative Motion for a More Definite Statement</u>

Chartis moves, in the alternative, for a more definite statement. Specifically, Chartis asks the Court to require the Tesoro parties to plead separately, so that Chartis may determine which entity is pursuing which claim, and under what legal theory.  According to Chartis, the Tesoro parties' practice of

40

referring to themselves collectively as "Tesoro" and asserting claims collectively obscures the fact that Tesoro Corporation and Tesoro Refining have not suffered the same losses and are in materially different situations with respect to the Policy and its coverage.  (See MTD at 17 ("Tesoro Corporation and Tesoro Refining are separate entities with disparate facts and theories justifying their alleged entitlement to coverage and damages.").)  Chartis claims that this practice also makes it difficult for it to assert defendant-specific defenses.  (Id. at 17.)

A motion for a more definite statement is typically appropriate only when a pleading is so unintelligible, vague, or ambiguous that the opposing party cannot reasonably prepare a response.  Fed. R. Civ. P. 12(e); Davenport, 147 F. Supp. 2d at 639 (observing that Rule 12(e) motions are generally disfavored and are used "to provide a remedy only for an unintelligible pleading").  In general, the Tesoro parties' 25-page Counterclaim does not suffer from any of these flaws.

Furthermore, the cases cited by Chartis in support of its request that the Tesoro parties be ordered to plead separately are distinguishable from the case at hand.  In one, ten separate corporations had joined together as plaintiffs in a single count seeking damages for alleged antitrust violations.  Erone Corp. v. Skouras Theatres Corp., 19 F.R.D. 299, 299 (S.D.N.Y. 1956).  The court ordered the plaintiffs to file an amended complaint stating each plaintiff's claim separately,

noting that the complaint as drawn failed to allege each plaintiff's specific business during the period in question, making it difficult to determine whether each was engaged in trade and commerce within the scope of the antitrust laws.  Id. at 300. In the other case, the court held that one plaintiff's allegations were too vague to determine whether it was a real party in interest, and ordered the plaintiff to file an amended complaint setting forth its "true status."  Cal. League of Indep. Ins. Producers v. Aetna Cas. & Sur. Co., 175 F. Supp. 857, 861 (N.D. Cal. 1959). Both, then, involved complaints too factually deficient to determine whether the plaintiffs could bring the claims alleged.

Here, by contrast, Chartis has not identified any way in which the Tesoro parties' practice of asserting claims collectively has impeded Chartis's ability to assess the parties' individual claims.  It is clear, for example, that the Tesoro parties' failure to plead separately has not prevented Chartis from asserting party-specific defenses, as evidenced by the instant motions to dismiss, which seek dismissal of only Tesoro Corporation's breach of contract and bad faith claims. Thus, although the Court acknowledges that separating Tesoro Corporation's claims from Tesoro Refining's claims would no doubt render the task of responding to them simpler, the Tesoro parties' practice of pleading collectively does not so obscure the parties' respective positions as to warrant ordering them to

plead separately.  The Court therefore **DENIES** Chartis's Alternative Motion for a More Definite Statement (doc. # 34).

III.     Motion to Bifurcate and Motion for Case Management Order

Chartis moves to bifurcate and stay the Tesoro parties' bad faith claim[6] pending resolution of the coverage issues.  (Mot. to Bif. at 1.)  Chartis reasons that, because the bad faith claim necessarily relies upon a finding that one or both of the Tesoro parties were entitled to coverage under the Policy, if Chartis's interpretation of the Policy is correct, the Tesoro parties cannot prevail on a claim of bad faith.  (Id. at 2.)  Thus, bifurcation would promote judicial efficiency and prevent unnecessary discovery and legal disputes related to the bad faith claim.  (Id.)  Chartis also argues that bifurcation "is necessary to avoid prejudice to Chartis from [the Tesoro parties'] use of bad faith evidence that would be inadmissible and irrelevant to the contractual issues."  (Id.)  Finally, Chartis claims that there is no overlap of evidence and witnesses with respect to the two types of claims.  (Id. at 6–8.)  Specifically, Chartis argues that "the coverage issues depend primarily on the Policy itself and the communications and documents generated during the underwriting and issuance of the Policy and its 2002 transfer

---

[6]  This Order disposes of Tesoro Corporation's bad faith claim, but Tesoro Refining's bad faith claim remains live.

to Tesoro Corporation," and the relevant witnesses will be the underwriters and brokers involved in the Policy's execution.  (Id. at 6.)  In contrast, the Tesoro parties' bad faith claim relates to the parties' interactions over the past five years, and the relevant witnesses will be the personnel involved.  (Id. at 7.)

In response, the Tesoro parties argue that Chartis has failed to satisfy its burden of showing that bifurcation is warranted.  (Doc. # 35 at 4.)  According to the Tesoro parties, severance will not be more efficient, because the issues overlap significantly.  Specifically, the Tesoro parties argue that "[t]he original intent behind [the Policy] . . . as well as [Chartis's] prior course of dealing, are factual issues that permeate both [the Tesoro parties'] coverage and bad faith claims."  (Doc. # 35 at 4.)  The Tesoro parties point to six cases decided by Texas federal district courts in which severance was denied under circumstances very similar to those in this case.  (Id. at 5–6.)

The Tesoro parties also maintain that Chartis's arguments regarding the potential for prejudice are "hollow" and "hypothetical" and unsupported by the case law.  (Id. at 9.)  They contend that bifurcation and abatement of the extracontractual claim will prejudice them by "unduly prolong[ing] the litigation in the event that [the insurer] is found to have breached the insurance contract."  (Doc. # 35 at 10 (quoting Whittenburg v. State Farm Mut. Auto. Ins. Co., No. 3:96-

CV-2837-D, 1997 WL 10036, at *1 (N.D. Tex. Jan. 8, 1997)).)  Finally, the Tesoro

parties argue that the Motion to Bifurcate is premature, having been filed before

the parties have agreed on a case management plan, which may eliminate the need

for bifurcation (id. at 4–5), and before the parties have taken any discovery or even

exchanged Rule 26(a)(1) disclosures identifying individuals likely to have

discoverable information (doc. # 41 at 2).

       The Court agrees with the Tesoro parties that Chartis's arguments

regarding the potential for prejudice do not militate in favor of bifurcation at this

time.  Chartis argues that the evidence related to the Tesoro parties' bad faith claim

will cast Chartis in a bad light and prejudice Chartis in the eyes of the jury, despite

being irrelevant to the contract claims.  (Mot. to Bif. at 8.)  Citing to Liberty

National Fire Insurance Company v. Akin, 927 S.W.2d 627, 630 (Tex. 1996),

Chartis also argues that the introduction of evidence regarding settlement

negotiations would be improper and inadmissible and would potentially influence

the jury's decision with respect to the coverage issues.  (Mot. to Bif. at 9–10.)

However, Akin itself emphasizes that although

> some courts have concluded that the insurer would be unfairly
> prejudiced by having to defend the contract claim at the same time and
> before the same jury that would consider the evidence that the insurer
> had offered to settle the entire dispute . . . in the absence of a
> settlement offer on the entire contract claim, or other compelling
> circumstances, severance is not required.

45

927 S.W.2d at 630 (emphasis added).  In this case, there is no allegation that

Chartis offered to settle Tesoro Corporation's claim.  The Court concludes that the

types of potential prejudice Chartis has identified are not so severe that they cannot

be cured by an appropriate jury instruction.  See Serv. Steel Warehouse Co., L.P. v.

Ace Am. Ins. Co., No. H-09-691, 2011 WL 43425, at *3 (S.D. Tex. Jan. 6, 2011).

With respect to the argument that bifurcation would promote

efficiency, the Court finds the following observation made by the court in Houston

McLane instructive:

> Separate trials will save time and resources only if, in fact,
> Connecticut General prevails on the contractual claim. If it does not,
> then a great deal of time will be wasted retaking depositions, engaging
> in additional discovery, empanelling a new jury, and conducting a
> second trial. This is particularly so when, as here, many of the same
> facts and witnesses are relevant to both the contractual and extra-
> contractual issues.

2006 WL 3050812, at * 2.  In that case, the plaintiff filed suit against insurance

company Connecticut General when Connecticut General denied the plaintiff's

insurance claim, alleging breach of contract and breach of the common law duty of

good faith and fair dealing.  Id. at *1.  The court concluded that the same facts and

witnesses were relevant to both claims because the claims agent would likely have

relevant knowledge of the scope of the plaintiff's insurance contract as well as how

the claim was handled internally.  Id.  In this case, the Court agrees with Chartis that the overlap of facts and witnesses is not likely to be complete, given the lapse of several years between the execution and assignment of the contract on the one hand and the alleged conduct giving rise to the Tesoro parties' bad faith claim on the other.  However, the Court also finds convincing the Tesoro parties' argument that certain evidence will be relevant to both claims; for example, evidence of the original intent of the parties, and evidence of the parties' course of dealing.  (Doc. # 35 at 6.)  Given that discovery regarding the various claims will likely involve many of the same people and records, the Court concludes that proceeding with discovery as to all claims at this time will be most efficient.

Furthermore, the Court agrees with the Tesoro parties that whatever convenience could be achieved by bifurcating the coverage issues from the bad faith claims could also be achieved by entry of an appropriate case management, or scheduling, order.  For example, the Tesoro parties suggest a phased case management approach, whereby issues would be explored according to the order in which the Tesoro parties believe the issues must logically be confronted.  Phase 1 would be limited to choice of law, placement of the policy, and construction of the policy terms and conditions; Phase 2 would address all remaining issues in the case, including the nature and amount of the claimed loss, pollution conditions at

the insured site, the Tosco arbitration and settlement, and extracontractual claims; and in Phase 3 the parties would engage in discovery related to expert testimony. (Doc. # 43 Ex. 1.)

Chartis "agree[s] that this case should be streamlined through a phase approach," and even admits that the parties both "agree that the interpretation of the policy should be addressed first." (Doc. # 44 at 10.) However, Chartis opposes the Tesoro parties' proposed case management plan, maintaining that the "most efficient and appropriate way to divide the case is through the bifurcation proposed by Chartis." (Id.) For the reasons discussed above, the Court **DENIES** without prejudice Chartis's Motion to Bifurcate.[7] That being so, the Court also **DENIES** without prejudice the Tesoro parties' Motion for Entry of a Case Management Order to allow the parties an opportunity to confer regarding a mutually agreeable scheduling order. However, if the parties are unable to reach an agreement, the Tesoro parties may refile their Motion and Proposed Case Management Order.

---

[7] The Court recognizes that discovery may reveal evidence admissible only on the bad faith claims that would significantly prejudice Chartis's ability to defend the contract claims. If that situation arises, Chartis may renew its motion prior to trial.

CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and

**DENIES IN PART** Chartis's Motion to Dismiss or, in the Alternative, Rule 12(e)

Motion for More Definite Statement (doc. # 34) and Chartis's Motion to Dismiss

Claims in First Amended Complaint Pursuant to Rule 12(b)(6) or, in the

Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e) (Cv. No.

SA-12-CV-00256-DAE, doc. # 29); **DENIES** Chartis's Motion to Bifurcate

without prejudice to refiling (doc. # 32); and **DENIES** Tesoro Corporation and

Tesoro Refining's Motion for Entry of a Case Management Order without

prejudice to refiling (doc. # 43).

IT IS SO ORDERED.

DATED: San Antonio, Texas, March 11, 2013.

_____
David Alan Ezra
Senior United States District Judge

49