IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARTIS SPECIALTY INSURANCE | § | CV. NO. 5:11-CV-927-DAE |
| COMPANY, | § | CV. NO. 5:12-CV-256-DAE (con.) |
| | § | |
| Plaintiff / | § | |
| Counter-Defendant, | § | |
| | § | |
| vs. | § | |
| | § | |
| TESORO CORPORATION AND | § | |
| TESORO REFINING AND | § | |
| MARKETING COMPANY, | § | |
| | § | |
| Defendants / | § | |
| Counter-Plaintiffs. | § | |
| _____ | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION TO
STRIKE; (2) GRANTING CHARTIS'S PHASE I MOTION FOR SUMMARY
JUDGMENT; (3) DENYING TESORO REFINING'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON THIRD-PARTY BENEFICIARY ISSUE;
(4) DENYING TESORO COMPANY AND TESORO REFINING'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON THE REFORMATION AND
STATUTE OF LIMITATIONS ISSUES

On March 31, 2015, the Court heard Chartis Specialty Insurance

Company's[1] Phase I Motion for Summary Judgment ("Chartis MSJ," Dkt. # 70[2]);

_____

[1] The Court will refer to Plaintiff as "Chartis Specialty Insurance Company" or
"Chartis," even though Plaintiff's pleadings indicate that it is now known as AIG

Tesoro Refining and Marketing Company's Motion for Partial Summary Judgment on the Third-Party Beneficiary Issue ("Tesoro MSJ I," Dkt. # 71); and Tesoro Corporation and Tesoro Refining and Marketing Company's Motion for Partial Summary Judgment on the Reformation and Statute of Limitations Issues ("Tesoro MSJ II," Dkt. # 72).   At the hearing, Scott L. Davis, David H. Timmins, and Jason B. Heep, Esqs., represented Plaintiff Chartis Specialty Insurance Company ("Chartis"); Bernard P. Bell and Daniella Einik, Esqs., represented Defendant Tesoro Corporation ("Tesoro Corporation") and Tesoro Refining and Marketing Company ("Tesoro Refining") (collectively, the "Tesoro parties").

Upon careful consideration of the arguments asserted in the supporting and opposing memoranda, as well as the arguments presented at the hearing, the Court **GRANTS** Chartis's Motion for Summary Judgment (Dkt. # 70), **DENIES** the Tesoro Refining's Motion for Partial Summary Judgment on the Third-Party Beneficiary Issue (Dkt. # 71), and **DENIES** the Tesoro Parties' Motion for Partial Summary Judgment on the Reformation and Statute of Limitations Issues (Dkt. # 72).   In conjunction with this ruling, the Court also

---

Specialty Insurance Company, since Plaintiff has made no motion to substitute under Federal Rule of Civil Procedure 25.

[2] Citations to the docket will refer to the docket of the lead case, <u>Chartis Specialty Insurance Company v. Tesoro Corporation</u>, No. 5:11-CV-927-DAE, unless otherwise indicated.

**GRANTS IN PART AND DENIES IN PART** Chartis's Motion to Strike (Dkt. # 75).

<u>BACKGROUND</u>

I.      <u>Factual Background</u>

Chartis is an insurance company incorporated in Illinois with its principal place of business in New York, New York.  ("FAC," Dkt. # 33 ¶ 1.) Tesoro Corporation is a San Antonio-based Delaware corporation, and Tesoro Refining is its wholly-owned subsidiary.  (FAC ¶ 3; "Counterclaim," Dkt. # 37 pp. 11–36 ¶ 16.)  This case involves a dispute over liability insurance coverage under a policy issued by Chartis.  Two properties owned by Tesoro Refining were insured under the policy: the Golden Eagle Refinery (formerly the Avon Refinery) (the "Refinery") and Amorco Wharf[3] (the "Wharf").  ("Policy," Chartis MSJ, Ex. 3 at App. 34.)

The Refinery began operations in 1913 and has since witnessed a series of owners, including Texaco, Inc. ("Texaco"), Phillips Petroleum Company ("Phillips"), and Tosco Corporation ("Tosco").[4]  (FAC ¶ 15; Counterclaim ¶¶ 6–9.) Between 1989 and 1999, the Environmental Protection Agency (the "EPA") and

---

[3] Tesoro Refining no longer owns or operates the Wharf, pursuant to a transfer to a separate and distinct entity in April 2012.  (FAC ¶ 18.)

[4] Although the pleadings are unclear, it appears that the Wharf was also owned by these entities.

the California Regional Water Quality Control Board for the San Francisco Bay
Region (the "Water Board") issued five separate remediation orders regarding
contamination at the Refinery and the Wharf.  (Counterclaim at 13.)  In July 1993,
Tosco and prior owners Phillips and Texaco entered into a Joint Environmental
Investigation and Remediation Agreement, which allocated costs of remediation
and formed a committee called the Joint Environmental Investigation and
Remediation Committee ("JEIRC").  (FAC at 9.)  Pursuant to the JEIRC
agreement, Tocso was liable for 50% of the JEIRC costs and Phillips and Texaco
were each liable for 25% of the JEIRC costs.  (Counterclaim at 13.)  Under the
JEIRC agreement, Tosco paid $16.3 million in remediation costs.  (FAC at 9.)

      In August 2000, Tosco sold the Refinery to Ultramar Diamond
Shamrock Corporation ("Ultramar").  ("Ultramar PA," Chartis MSJ, Ex. 1 at App.
6.)  Because the purchase agreement expressly allocated environmental liability for
any condition arising after the date of sale to Ultramar, Ultramar secured a
Specialty Pollution Legal Liability insurance policy from Chartis to cover certain
environmental remediation costs.[5]  (Policy at 1.)  That policy generally covered
clean-up costs up to $100 million, contingent on a $500,000 deductible.  (FAC

---

[5] This past version of the policy apparently suffered the same deficiency as the
current policy in that it failed to name Ultramar's subsidiary that owned and
operated the Refinery as a named insured, even though Ultramar's application for
coverage listed both the parent and subsidiary the entities requesting coverage.
(Dkt. # 71-3 at 2, 5; Dkt. # 71-7 at 79–80.)

¶ 24; Chartis MSJ, Ex. 5.)  However, the policy had a separate $50 million self-insured retention ("SIR") for pre-existing environmental conditions, which provided that Chartis would only pay clean-up costs for pre-existing environmental conditions in excess of $50 million.  (FAC ¶ 25; Chartis MSJ, Ex. 5.)  As part of the purchase and sale agreement between Tosco and Ultramar, Tosco indemnified Ultramar for up to $50 million of environmental liability.  (FAC ¶ 33.)

In late 2001, Valero Energy Corporation ("Valero") acquired Ultramar.[6]  (Chartis MSJ, Ex. 7 at App. 93.)  Pursuant to consent decrees with the United States Federal Trade Commission, Ultramar agreed to divest certain assets, including the Refinery.  (Id.)  Accordingly, on February 4, 2002, Ultramar executed an agreement selling the Refinery to Tesoro Refining, a wholly-owned subsidiary separate from Tesoro Corporation (the "Agreement").  (Id.)

Given the seriousness of the known environmental liabilities, both parties understood that the Agreement would include an assignment of Ultramar's insurance policy with Chartis and the partial indemnification promised by Tosco to Ultramar.  (Chartis MSJ, Ex. 7 at App. 123; "Hubbard Decl.," Tesoro MSJ I, Bell Decl., Ex. 20 at 19:5–22; Tesoro MSJ I, Doerr Decl. ¶ 3.)  Chartis and the Tesoro parties disagree as to whether Tesoro Corporation or Tesoro Refinery was the

---

[6] Because the parties refer to Ultramar and Valero as Ultramar in their briefings, the Court will do the same.

intended assignee of that benefit.  Ultimately, after a series of written communications between representatives from Chartis, the Tesoro Parties, Ultramar, and Marsh USA Inc. ("Marsh"),[7] Chartis issued an Endorsement to the Policy on May 17, 2002, naming Tesoro Corporation—not Tesoro Refining—as the insured.  (Chartis MSJ, Ex. 20.)

In 2003, Tesoro Refining filed suit against Tosco, alleging that Tosco had fraudulently concealed environmental conditions at the Refinery, which caused Tesoro Refining to face substantial obligations and liabilities for undisclosed conditions.  (FAC ¶ 63.)  Sometime thereafter, ConocoPhillips acquired Tosco and was substituted for Tosco in the action.  (Id. ¶ 68.)  In March 2007, Tesoro Refining and ConocoPhillips settled the suit in arbitration.  (Id. ¶ 70.)  Pursuant to the settlement agreement, Tesoro Refining received $58.5 million in exchange for Tesoro Refining's release of ConocoPhillips, Tosco, and Phillips, and agreed to assume liability for the environmental liabilities of Tosco and Phillips at the Refinery and the Wharf.  (Id.)

Meanwhile, in 2004, the Water Board issued an order to Tesoro Refining, ConocoPhillips, and Texaco regarding the Refinery and the Wharf, which resulted in the detection of a contaminant in the groundwater at the Wharf and a request for remediation.  (FAC ¶¶ 59–60.)  In January 2007, the Water Board

---

[7] Marsh was the insurance broker for the Tesoro Parties and Ultramar.

issued a second order to Tesoro Refining and ConocoPhillips regarding

remediation at the Wharf.  (Id. ¶ 62.)

   In February 2007, Tesoro Corporation provided its first notice to

Chartis regarding the lawsuit with Tosco regarding the pre-2000 environmental

liabilities.  (FAC ¶ 73.)  In July 2007, Chartis sent Tesoro Corporation a

reservation of its rights under the Policy.  (Counterclaim ¶ 68.)  In October 2009,

Tesoro Corporation sent Chartis a letter demanding coverage and stating that its

environmental liabilities had exceeded the applicable deductibles and/or the SIR.

(Id. ¶ 69.)  Tesoro Corporation followed up with Chartis in July 2010, demanding

coverage and adding additional costs incurred at the Wharf in excess of the

$500,000 deductible.  (Id. ¶ 71.)  Tesoro Corporation sent another letter to Chartis

in August 2010, supplementing its demand with specific costs incurred at the

Refinery in the amount of $69 million.  (Id. ¶ 72.)  In October 2010, Tesoro

Corporation supplemented its demand with documentation of costs in the amount

of $70 million.  (Id. ¶ 74.)  Following several meetings and exchanges of technical

documentation of remediation between late 2010 and late 2011, Chartis filed the

instant suit in November 2011.  (Id. ¶¶ 75–91.)

   The Tesoro parties contend that the amounts paid to Tesoro Refining

in the ConocoPhillips settlement satisfy the SIR and that remediation costs

incurred by Tosco since 1993 also apply to the SIR.  (FAC ¶ 105.)  Chartis

contends that remediation costs paid by Tesoro Refining do not erode the SIR because it is not the Named Insured.  (Id. ¶ 107.)  It also contends that the amounts paid by the Tosco settlement do not satisfy the SIR because the SIR must be borne by the "Insured," and that, pursuant to Condition B of the Policy, the settlement proceeds from ConocoPhillips must first be applied to any payments made under the Policy before the monies can satisfy the SIR.  (Id. ¶¶ 107–109.)

II.     Procedural Background

Chartis's original Complaint in the instant action, filed November 7, 2011, named only Tesoro Corporation as a defendant and sought the following declarations: that Tesoro Corporation has not yet satisfied the Policy's SIR; that remediation costs not otherwise covered by the Policy do not satisfy the SIR; that amounts Tesoro Corporation received from ConocoPhillips in the 2007 settlement do not satisfy the SIR; that remediation costs paid by Tosco or ConocoPhillips under their Joint Investigation and Remediation Agreement do not satisfy the SIR; and that Chartis has no obligation to pay until Tesoro Corporation has satisfied the SIR separate and apart from the amounts recovered from ConocoPhillips.  (Dkt. # 1 ¶ 50.)

On November 29, 2011, Tesoro Corporation and Tesoro Refining filed a complaint against Chartis in the United States District Court for the Northern District of California (the "California action").  See Tesoro Corp., et al.

8

v. Chartis Specialty Ins. Co., No. 4:11-cv-05718-PJH (N.D. Cal. Nov. 29, 2011).
The complaint included claims for breach of contract, breach of the implied
covenant of good faith and fair dealing, and declaratory relief.  (Cv. No. SA-12-
CV-00256-DAE, Dkt. # 1.)  On March 2, 2012, United States District Judge
Phyllis J. Hamilton, ruling on Chartis's Motion to Dismiss, Transfer or Stay the
Action (Cv. No. SA-12-CV-00256-DAE, Dkt. # 14), concluded that the California
action should be transferred to the United States District Court for the Western
District of Texas pursuant to the first-to-file rule (Cv. No. SA-12-CV-00256-DAE,
Dkt. # 36 at 1).  Accordingly, on March 19, 2012, the California action was
transferred to this Court.  (Cv. No. SA-12-CV-00256-DAE, Dkt. # 37.)

      Meanwhile, in the instant action, Tesoro Corporation had filed a
Motion to Dismiss, Stay, or Transfer the Proceedings to the United States District
Court to the United States District Court for the Northern District of California.
(Dkt. # 8.)  On May 21, 2012, the Court denied the motion and ordered that the
California action be consolidated with the instant action.  (Dkt. # 27 at 2.)

      On August 31, 2012, Chartis filed a First Amended Complaint,
naming Tesoro Refining as a defendant and seeking, in addition to the declarations
sought in the original complaint, declarations that: Tesoro Refining is not a Named
Insured on the Policy and is not entitled to coverage under the Policy; Tesoro
Corporation is not entitled to coverage under the Policy because it has not paid any

9

clean-up costs and has not incurred any legal obligation to pay for any such costs;

in the alternative, any coverage for known pollution conditions terminated in 2005;

the Tesoro parties are not entitled to coverage because Tesoro Refining's

settlement with Tosco and ConocoPhillips violated the Policy; the Tesoro parties

are not entitled to clean-up costs resulting from Tesoro Refining's assumption of

liability under the settlement because the Policy excludes coverage for such costs;

the Tesoro parties are not entitled to coverage because they violated the Policy's

requirement that they provide notice of pollution conditions as soon as practicable;

and certain of the costs incurred in connection with the remediation of the Refinery

and/or Amorco Wharf are not covered because they do not qualify as clean-up

costs.  (FAC ¶ 115.)  On September 17, 2012, the Tesoro parties filed an Answer

and Counterclaims, alleging breach of contract and breach of the implied covenant

of good faith and fair dealing, and requesting declaratory relief that Tesoro

Corporation is an intended beneficiary of the policy or, in the alternative, contract

reformation.  (Dkt. # 37.)  On March 11, 2013, this Court dismissed Tesoro's

breach of contract and bad faith counterclaims, leaving the third-party beneficiary

and contract reformation claims the only remaining counterclaims.  (Dkt. # 54 at

39.)

          On November 7, 2014, Chartis filed its Phase I Motion for Summary

Judgment.  (Dkt. # 70.)  On November 21, 2014, the Tesoro parties filed their

Response (Dkt. # 76), and on December 5, 2014, Chartis filed its Reply (Dkt. # 81.)

On November 7, 2014, Tesoro Refining filed a Motion for Partial Summary Judgment on the third-party beneficiary issue (Dkt. # 71). Together, the Tesoro parties also filed a Motion for Partial Summary Judgment on the reformation and statute of limitations issues (Dkt. # 72). Chartis filed Responses to both Motions on November 21, 2014 (Dkts. ## 73, 74), to which Tesoro Refining and the Tesoro parties, respectively, filed Replies (Dkts. ## 82, 83). On November 21, 2014, Chartis also filed a Motion to Strike declarations used in the Tesoro parties' Motions for Summary Judgment (Dkt. # 75). The Tesoro parties filed a Response on December 1, 2014 (Dkt. # 77), and Chartis filed a Reply on December 8, 2014 (Dkt. # 84).

## LEGAL STANDARD

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence."  Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

12

<u>DISCUSSION</u>

In its Phase I Motion for Summary Judgment, Chartis argues that Tesoro Refining is not an intended third-party beneficiary of the Policy because it does not show any intent to confer a direct benefit to Tesoro Refining and that the Tesoro parties' reformation claim is barred by the statute of limitations and, regardless, fails because there is no antecedent agreement to name Tesoro Refining as an insured and no mutual mistake in failing to do so.  (Chartis MSJ at 11–20.) Chartis contends that Texas law applies to both claims.  (<u>Id.</u> at 8–11.)

In its Motion for Partial Summary Judgment on the Third-Party Beneficiary issue, Tesoro Refining argues that it is a third-party beneficiary under the contract because both Tesoro Corporation and Chartis intended that Tesoro Refining have the right to enforce the policy and because a construction to the contrary would render the coverage illusory.  (Tesoro MSJ I at 8–14.)  In their Motion for Partial Summary Judgment on the Reformation and Statute of Limitations Issues, the Tesoro parties argue that reformation is warranted under both Texas and California law and that the reformation is not barred by either statute of limitations.  (Tesoro MSJ II at 6–13.)  With respect to the Third-Pary Beneficiary and Reformation/Statute of Limitations Motions, the Tesoro parties contend that summary judgment is warranted under either Texas or California law,

but that if a choice of law is necessary, California law controls.  (Id. at 14–16;

Tesoro MSJ I at 16–20.)

I.      Motion to Strike

        Chartis moves to strike three paragraphs from the Tesoro parties'

evidentiary record: paragraph 8 of Dana Harvey's ("Harvey") declaration and

paragraphs 12 and 13 of Bernard Bell's ("Bell") declaration.  (Dkt. # 75 at 3–4.)

The Court addresses each statement in turn.

        A.      Paragraph 8 of Harvey's Declaration

        Paragraph 8 of Harvey's declaration states:

> I have reviewed certain documents that I understand have been
> produced in this lawsuit, and that were exchanged among Chartis,
> Marsh and the Ultramar parties in 2002, including the May 15, 2002
> assignment letters and specimen endorsements drafted by Chartis and
> faxed to Rudd Marlow and to Marsh.  True and correct copies of these
> documents are attached to this Declaration as Exhibit C.  <u>Based on my
> review of these documents, it is more likely than not that I prepared
> the May 16, 2002 letter to Mr. Hubbard in response to a request by
> him, relayed through Marsh, for a written letter requesting assignment
> of the Policy.  It is also more likely than not that I incorporated in the
> May 16, 2002 letter back to Mr. Hubbard the same terminology that
> Mr. Hubbard had used in his May 15, 2002 letter to Mr. Marlowe
> confirming assignment, which I would have seen following receipt of
> the letter by Mr. Marlowe.</u>

(Dkt. # 71-3 at 2–3 (emphasis added).)  Chartis objects to the underlined portions

on the basis that they are not made with personal knowledge.  (Dkt. # 75 at 3.)  The

Tesoro parties respond that Chartis's arguments concern the weight of the testimony, not the admissibility of the testimony.  (Dkt. # 77 at 2–3.)

Under Federal Rule of Evidence 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that that the . . . declarant is competent to testify on the matters stated."  The commentary to the Federal Rules of Evidence defines personal knowledge to mean that the witness "must have had an opportunity to observe, and must have actually observed the fact."  Fed. R. Evid. 602 advisory committee's note.  A statement is not within a declarant's personal knowledge if the statement is based on information and belief.  See de la O v. Housing Auth. of El Paso, 417 F.3d 495, 502 (5th Cir. 2005) (citing Bolen v. Dengel, 340 F.3d 300, 313 (5th Cir. 2003)).

Here, whether Harvey prepared the May 16, 2002 letter is within her personal knowledge: Harvey is familiar with the scope of her job responsibilities, as they existed in 2002, and whether those responsibilities likely would have led her to prepare the letter.  Accordingly, the Court **DENIES** the motion to strike as to the first contested sentence.

However, Harvey's statement about the particular terminology and the reasons that she used that terminology are distinguishable.  Of course, such statements are hypothetically within her personal knowledge: had she prepared the

letter, she would have chosen the letter's language.  However, she is unsure whether she prepared the letter; any statements about why she prepared the letter in a particular manner are pure speculation.  Accordingly, the Court **GRANTS** the motion to strike as to the second contested sentence.

B.    Paragraphs 12 and 13 of Bell's Declaration

After receiving the Motion to Strike, the Tesoro parties agreed to withdraw the disputed portions from Bell's declaration.  (Dkt. # 77 at 5.) Accordingly, the Court **DENIES AS MOOT** Chartis's Motion to Strike as related to paragraphs 12 and 13 of Bell's declaration.

Chartis nevertheless argues in its Reply that the language citing to those statements in the Motion for Summary Judgment on Third-Party Beneficiary Issue (Dkt. # 71) and Response to Chartis's Motion for Summary Judgment (Dkt. # 76) should be struck.  (Dkt. # 84 at 4.)  The Court disagrees.  The contested language in the declaration was a characterization of attached exhibits.  The language that Chartis identifies in the motion and response is supported by citations both to paragraphs 12 and 13 of Bell's declaration and the underlying exhibits.  The underlying exhibits sufficiently support the statements, and striking such statements is therefore unnecessary.

II.   <u>Third-Party Beneficiary Issue</u>

As this Court discussed in detail in its March 11, 2013 order (Dkt. # 54), a federal court sitting in diversity must apply the substantive law of the forum state, including the forum's choice of law rules.  (Dkt. # 54 at 19 (citing <u>Lockwood Corp. v. Black</u>, 669 F.2d 324, 327 (5th Cir. 1982).)  Because this case is a consolidated matter, combining cases filed in the Western District of Texas and in the Northern District of California, the decision as to the applicable law is "a thorny issue."  (<u>Id.</u> at 22.)  However, "[w]here there are no differences between the relevant substantive laws of the respective states, there is not conflict, and a court need not undertake a choice of law analysis."  (<u>Id.</u> at 23 (citing <u>R.R. Mgmt. Co. v. CFS La. Midstream Co.</u>, 428 F.3d 214, 222 (5th Cir. 2005)).)

Accordingly, the Court will analyze the parties' arguments as to the third-party beneficiary issue under both Texas and California law to determine whether a choice of law analysis is necessary.

A.   <u>Texas</u>

1.   <u>Applicable Law</u>

Under Texas law, "[p]arties are presumed to be contracting for themselves only." <u>Bridas S.A.P.I.C. v. Gov't of Turkmenistan</u>, 345 F.3d 347, 362 (5th Cir. 2003).  Accordingly, only the parties have standing to sue on a contract, unless a third party can demonstrate that the contract was made for their benefit.

Kona Tech. Corp. v. S. Pacific Transp. Co., 225 F.3d 595, 602 (5th Cir. 2000).  To
make such a showing, the third party must demonstrate that (1) it was not privy to
the written agreement; (2) the contract was actually made for its benefit; and
(3) the contracting parties intended for it to benefit by their agreement.  See
Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins., 924 F.2d 1347,
1350–51 (5th Cir. 1991).

         Because courts are limited to the "four corners of the instrument," In
re El Paso Refinery, LP, 302 F.3d 343, 354 (5th Cir. 2002), the burden of showing
intent is "a heavy one," In re GGM, P.C., 165 F.3d 1026, 1030 (5th Cir. 1999).
"When discerning the contracting parties' intent, courts must examine the entire
agreement and give effect to each provision so that none is rendered meaningless."
Tawes v. Barnes, 340 S.W.3d 419, 425 (Tex. 2011).  As such, "[a] court will not
create a third-party beneficiary contract by implication.  The intention to contract
or confer a direct benefit to a third party must be clearly and fully spelled out or
enforcement by the third party must be denied."  Basic Capital Mgmt., Inc. v.
Dynex Commercial, Inc., 348 S.W.3d 894, 900 (Tex. 2011).  "[T]he question is not
what the parties meant to say, but the meaning of what they did say."  Talman, 924
F.2d at 1351–52.

         Like all Texas contracts, "[i]f [insurance] policy language is worded
so that it can be given a definite or certain legal meaning, it is not ambiguous and

18

we construe it as a matter of law." Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124

S.W.3d 154, 157 (Tex. 2003).  Whether a contract is ambiguous is also a question

of law.  Id.  Although "ambiguous insurance contracts are interpreted against the

insurer," Palma v. Verex Assur., Inc., 79 F.3d 1453, 1458 (5th Cir. 1996), "all

doubts must be resolved against conferring third-party beneficiary status," Tawes,

340 S.W.3d at 425.

      2.    The Policy

Tesoro Refining concedes that the Policy only names Tesoro

Corporation as the insured and does not identify Tesoro Refining as an insured.

(Tesoro MSJ I at 16.)  However, it argues that an exception to the general rule

applies in this case, and that third-party beneficiary status exists because Ultramar

agreed to procure insurance for the benefit of Tesoro Refining but failed to do so.

(Id. at 15.)  In support, Tesoro Refining cites to Farmers Insurance Exchange v.

Nelson, 479 S.W.2d 717 (Tex. Civ. App. 1972).  (Id.)  Chartis contends that the

exception that Tesoro Refining cites—which Chartis identifies as the equitable lien

doctrine—does not apply if the named insured has no right to coverage in the first

place.  (Dkt. # 73 at 14–15.)

In Farmers Insurance Exchange, the Court found that an insurance

policy, which named only the lessee of a property, could be extended to the lessor

because the lessee breached his contract to insure the property for the benefit of the

19

lessor and thereby charged a lien on the benefits of the insurance policy in the

favor of the lessor.  479 S.W.2d at 721.  As the Court noted in its opinion, the

equitable lien doctrine is not necessarily limited to the lessor–lessee or

mortgagor–mortgagee relationship and would apply wherever the insured is

charged with the duty to obtain insurance on behalf of a third party to protect the

third party's interest in the property, but nevertheless fails to name that party in the

insurance policy.  Id. (citing Abilene White Truck Co. v. Petrey, 384 S.W.2d 211,

213 (Tex. Civ. App. 1964) (applying the doctrine where a purchaser agreed in the

deed of trust to secure insurance on machinery and failed to make the policy

payable to the seller)); accord State Farm Fire & Cas. Co. v. Leasing Enters., Inc.,

716 S.W.2d 553, 554 (Tex. App. 1986).  Such an arrangement permits the third

party to obtain proceeds that would otherwise be payable only to the named

insured.  See, e.g., Fidelity & Guaranty Ins. Corp. v. Super-Cold Sw. Co., 225

S.W.2d 924, 927 (Tex. Civ. App. 1949) ("It has been held many times by the

courts of this state and practically every other state in this country that an

agreement between a mortgagor and mortgagee under which the mortgagor is

charged with the duty of procuring insurance upon the mortgaged property for the

benefit of the mortgagee, will encumber the proceeds of any insurance so procured

by the mortgagor with a lien in favor of the mortgagee.").  However, "application

of this [exception] requires a pre-existing duty"; if the named insured does not owe

20

the duty to obtain insurance on behalf of the third party, the exception does not apply.  Duval Cnty. Ranch Co. v. Alamo Lumber Co., 663 S.W.2d 627, 632 (Tex. App. 1983).

   For this reason, Tesoro's argument falls short.  The named party on the Policy is now Tesoro Corporation, which made no promise to Tesoro Refining regarding the proceeds of the insurance policy that it executed with Chartis. (Chartis MSJ, Ex. 3.)  The promise that Tesoro points to is the one made between Ultramar, the former policy holder, and Tesoro Corporation.  (Tesoro MSJ I, Ex. 4.)  There is nothing in the case law to suggest that a promise made by a party no longer named on the insurance policy can dictate the insurance policy's proceeds once the promisor is no longer named on the policy.

   Nor would such a holding comport with the rationale behind the equitable lien doctrine.  The rationale behind the equitable lien doctrine is that the insured property belongs to a third party or secures a third party's interest in a purchase or a loan, and the third party should therefore be entitled to the policy's proceeds.  See, e.g., In re Douglass, 413 B.R. 573, 582 (Bankr. W.D. Tex. 2009) ("In general, an equitable lien arises when circumstances indicate that the parties intended specific property to secure payment of a debt" (internal quotation marks omitted)); Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank, 763 S.W.2d 52, 55 (Tex. App. 1988) ("It must be remembered that the purposes of the loss

payable clause to the mortgagee in an insurance policy . . . is to protect the security interest of one who has advanced money to others for the purpose of property); Farmers Ins. Exchange, 479 S.W.2d at 721.  Accordingly, there can be no equitable lien if the property no longer belongs to the lessor or the debt that the property secures has been satisfied.  See, e.g., Beneficial Standard Life Ins. Co., 763 S.W.2d at 55.

Here, there is no property secured by or otherwise owned by any of the parties that the proceeds from the Policy would protect.  The issue here is that Tesoro Refining should be named as the insured on the policy instead of Tesoro Corporation, which does not own the Refinery.  The equitable lien doctrine cannot protect Tesoro Refining here; the proper solution is seeking contract reformation to correct the mistake that occurred.  Accordingly, under Texas law, there is no genuine issue of material fact as to whether Tesoro Refining is a third-party beneficiary of the Policy.

B.    California

1.    Applicable Law

Under California law, "a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties . . . rescind it." Cal. Civ. Code § 1559.  "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears

22

from the terms of a contract." <u>Arata v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 35

Cal. Rptr. 703, 706 (Cal. Dist. Ct. App. 1963) (internal quotation marks omitted).

"[T]he third person need not be named or identified individually to be an express

beneficiary." <u>Kaiser Eng'rs, Inc. v. Grinnell Fire Protection Systems Co.</u>, 219 Cal.

Rptr. 626 (Cal. Ct. App. 1985). "[A] third party may enforce a contract if it can be

shown that he or she is a member of the class for whose express benefit the

contract was made," <u>id.</u>, or "[i]f the terms of the contract necessarily require the

promisor to confer a benefit on a third person," <u>Spinks v. Equity Residential</u>

<u>Briarwood Apartments</u>, 171 Cal. Rptr. 3d 453, 468 (Cal. Ct. App. 2009).

        2.    <u>The Policy</u>

        Tesoro Refining concedes that the Policy does not name it as an

insured. (Tesoro MSJ I at 9.) However, Tesoro Refining argues that it is

nevertheless entitled to coverage as a third-party beneficiary because (1) evidence

of the circumstances and negotiations of the parties in making the Policy shows an

intent to cover Tesoro Refining; (2) the alternative reading would render the Policy

illusory; and (3) California would apply Alaska law and recognize Tesoro Refining

as a third-party beneficiary. (<u>Id.</u> at 8–13.) Chartis counters that (1) extrinsic

evidence is inappropriate here, where the terms of the Policy do not indicate any

intent to benefit the third party; (2) the current coverage under the Policy is not

illusory; and (3) California courts have expressly rejected the implied at law third

party beneficiary theory that Alaska courts have adopted.  (Dkt. # 73 at 16–24.)

a.  <u>Intent to Cover Tesoro Refining</u>

"While intent is pivotal, there is no requirement that both of the

contracting parties must intend to benefit the third party.  Rather, it is sufficient

that the promisor must have understood that the promise had such intent."  <u>Spinks</u>,

90 Cal. Rptr. 3d at 468 (alterations, citations, and internal quotation marks

omitted).  Courts are to determine intent, where possible, solely from the language

of the written contract.  <u>Id.</u> at 469.  However, when a contract is ambiguous,[8]

"evidence of the circumstances and negotiations of the parties in making the

contract is both relevant and admissible."  <u>Id.</u>  A court may also consider "the

subsequent conduct of the parties in construing an ambiguous contract," since their

actions are "important evidence of their intent."  <u>Id.</u> at 470 (internal quotation

marks omitted).  "Generally, it is a question of fact whether a particular third

person is an intended beneficiary of a contract," unless "the issue can be answered

by interpreting the contract as a whole and doing so in light of the uncontradicted

evidence of the circumstances and negotiations of the parties in making the

---

[8] "A policy provision is ambiguous if it is capable of two or more reasonable constructions.  Even apparently clear language may be found to be ambiguous when read in the context of the policy and the circumstances of the case."  <u>Employers Reinsurance Co. v. Superior Court</u>, 74 Cal Rptr. 733, 745 (Cal. Ct. App. 2008).

24

contract." <u>Prouty v. Gores Tech. Grp.</u>, 18 Cal. Rptr. 3d 178, 184 (Cal. Ct. App. 2004).

In most cases, a court must at least give a cursory consideration to extrinsic evidence demonstrating the intent of the contracting parties. <u>See</u> <u>Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.</u>, 69 Cal. 2d 33, 39–40 (Cal. 1968) (en banc) ("[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties."). However, analysis of the intent of the contracting parties is limited to interpreting the actual words used in the written agreement. <u>Appling v. State Farm Mut. Auto. Ins. Co.</u>, 340 F.3d 769, 777 (9th Cir. 2003) (citing <u>Brawthen v. H&R Block, Inc.</u>, 104 Cal. Rptr. 486 (Cal. Ct. App. 1972)). "If the court finds that the contract is not susceptible to alternative meanings, then it may proceed to determine the issue based on the plain meaning of the contract language." <u>Id.</u>

As of May 2002, the Policy listed the named insured as Tesoro Corporation and listed the insured properties as the Refinery and the Wharf. (Chartis MSJ, Exs. 3, 20.) There is no evidence of ambiguity; the named insured and the insured properties are clear and defined, and Tesoro Refining is not mentioned in the contract. <u>See</u> <u>Muzzi v. Bel Air Mart</u>, 89 Cal. Rptr. 3d 632, 636 (Cal. Ct. App. 2009) (holding that a contract provision is ambiguous "when it is capable of two or more constructions, both of which are reasonable" (internal

25

quotation marks omitted)).  Based on that plain language, there is no provision

giving rise to a third-party beneficiary claim.  <u>Compare with</u> <u>Rodriguez v. Oto</u>, 151

Cal. Rptr. 3d 667, 672–74 (Cal. Ct. App. 2013) (finding that a contract provision

releasing specifically named individuals and "all other persons, firms,

corporations . . ." was an unambiguous third-party beneficiary clause).

Instead, the Tesoro parties argue that they understood Tesoro Refining

to be covered by Tesoro Corporation's name on the Policy, that Tesoro Refining

was therefore an intended beneficiary of the contract, and the Court should

consider extrinsic evidence that the parties intended that Tesoro Refining would be

a third-party beneficiary of the Policy.  In fact, the evidence, as characterized by

and in the light most favorable to the Tesoro parties, demonstrates that the Tesoro

parties intended that Tesoro Refining be a named beneficiary of the Policy, not a

third-party beneficiary.  (Tesoro MSJ II at 7 ("[T]he Policy as Written did not

conform with 'what the [Policy] was intended to mean, and what were intended to

be its legal consequences.'"); Tesoro MSJ I at 9 ("Tesoro Corporation intended,

prior to the assignment of the Policy, that Tesoro Refining be covered by the

Policy." (citing Tesoro MSJ I, Haffner Decl. ¶¶ 6–7 ("The Tesoro parties intended

that the Policy to be assigned would cover the liabilities of the owner and operator

of the Refinery, which was to be Tesoro Refining."); Tesoro MSJ I, Doerr Decl.

¶ 3 ("I understood and expected that the coverage being assigned would include

coverage for the owner and operator of the refinery being acquired, namely Tesoro

Refining and Marketing Company, because I understood that the owner and

operator had the primary exposure for the pollution risk that was covered.”));

Dkt. # 76, Harvey Decl., Exs. A–D (naming Tesoro Refining as insured on other

pollution liability insurance policies.)  In short, the reason for the Policy’s

noncomformance with the Tesoro parties’ intentions is not because of ambiguous

language in the Policy; it is because Tesoro Refining was omitted from the Policy

entirely.

       This is precisely the circumstance the California Court of Appeals

addressed in <u>American Home Insurance Co. v. Travelers Indemnity Co.</u>, 175 Cal.

Rptr. 826 (Cal. Ct. App. 1981).  That case involved insurance claims on a policy

following a fire at a Toyota distribution center on property leased from the City of

Long Beach, California.  <u>Id.</u> at 828–29.  Four entities were involved in the dispute

on the insurance claims: Toyota Motor Company, the company that manufactured

vehicles in Japan; Toyota Motor Sales USA, the subsidiary responsible for the

vehicles during their transport from Japan to Long Beach, California; Toyota

Motor Distributors, the subsidiary that prepared the vehicles in Long Beach for

distribution to various dealers; and Davis, a California corporation that contracted

with Toyota Motor Distributors to maintain and prepare Toyota vehicles for

distribution from Long Beach to the dealers.  <u>Id.</u> at 828.

Because of its contract with Toyota Motor Distributors, Davis added Toyota Motor Distributors as an additional insured on its insurance policy that covered property damage to the vehicles while in Long Beach.  Id.  The insurance policy specifically identified the covered premises as the "part leased to the named insured."  Id.  However, Toyota Motor Distributors was not the lessee of the property from Long Beach; Toyota Motor Sales was the lessee, and Toyota Motor Distributors was the sublessee/licensee.  Id.

The court therefore considered whether Toyota Motor Sales was an intended third-party beneficiary under the insurance policy.  Id. at 834.  Reminding that any intent to cover a third party must be express in the insurance policy, the court found no evidence from the language of the contract that Toyota Motor Sales was an intended third-party beneficiary and instead was an "incidental beneficiary" that had no standing to enforce any terms in the insurance policy.  Id. at 836.

Without ambiguity in the contractual language or circumstances, the Court must construe the terms as written.  The terms as written do "not disclose any intent to insure a party which was subsequently omitted from the insurance policy," nor do they entitle Tesoro Refining to any insurance benefits.  See Am. Home Ins., 175 Cal. Rptr. at 834; Jones v. Aetna Cast. & Sur. Co., 33 Cal. Rptr. 2d 291 (Cal. Ct. App. 1994).  Accordingly, there is no question of fact as to whether Tesoro Refining qualifies as a third-party beneficiary under California law.

b.     Whether California Would Apply Alaska Law

Additionally, Tesoro Refining argues that there is no California law directly on point, but that California jurisprudence suggests that the California Supreme Court would follow Alaska law, which permits implied third-party beneficiary claims.  (Dkt. # 71 at 17–18.)  The Court disagrees.

The Ninth Circuit is clear that when "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that that the state's supreme court likely would not follow it." Ryman v. Sears, Roebuck and Co., 505 F.3d 993, 994 (9th Cir. 2007).

Although Tesoro Refining is correct that the California Supreme Court has never stated that there is no implied third-party beneficiary action in contract cases,[9] the Court finds that the California intermediary courts' contract

---

[9] Chartis argues that California courts have considered and squarely rejected the implied third-party beneficiary theory, citing to Jones v. Aetna Cas. & Sur., 33 Cal. Rptr. 2d 291 (Cal. Ct. App. 1994).  In Jones, the plaintiff leased commercial property from a company, which, under the terms of the lease, promised to obtain rental insurance for damage to the property, payable to the plaintiff that the plaintiff, as lessor, was obligated to pay.  Id.  Following a fire, the insurer refuse to provide coverage to the plaintiff; the plaintiff then sued the insurer for breach of the covenant of good faith and fair dealing.  Id.  Because the plaintiff was not a party to the insurance policy, the plaintiff argued that he was an implied-in-law coinsured and therefore had standing to sue the insurer.  Id.  The court concluded that there was no such cause of action under tort law, and that the plaintiff was otherwise not a third-party beneficiary of the insurance policy.

29

interpretation jurisprudence has addressed the issue.  California intermediary

courts classify third parties either as intended beneficiaries or incidental

beneficiaries, without a third option in between.  See, e.g., Serv. Emp. Int'l Union,

Local 99 v. Options, 133 Cal. Rptr. 3d 73, 79 (Cal. Ct. App. 2011); Spinks, 90 Cal.

Rptr. at 468; Jones v. Aetna Cas. & Sur. Co., 33 Cal. Rptr. 291, 295 (Cal. Ct. App.

1994).  As discussed supra, Section II.B.1, the rules of contract interpretation

defining who is intended and who is incidental are clear.

There is no indication that California Supreme Court would depart

from its clear rules in this context.  See Hess, 117 Cal. Rptr. at 230 (reminding that

the rules of contract law define whether a contract intends to benefit a third party).

Tesoro Refining cites to two cases to argue that the California courts are not clear

on the issue: Gillis v. Sun Insurance Office, Ltd., 47 Cal. Rptr. 868 (Cal. Ct. App.

1965) and Business to Business Markets Inc. v. Zurich Specialties London Ltd., 37

Cal. Rptr. 3d 295 (Cal. Ct. App. 2005).  Gillis, by Tesoro Refining's own

admission, is a reformation case.  (Dkt. # 71 at 18 ("Because the insurer had

---

In so holding, Jones distinguished its holding from a separate line of
California cases, which permit implied third party beneficiary claims in
subrogation actions.  Id.  The court reasoned that the principles governing
subrogation by an insurer are equitable in nature and therefore had no application
to tort claims.  Id.

Because there is a line of authority permitting implied beneficiary
claims in California and because Jones narrowly addressed the cause of action in
the tort context, Jones did not squarely address the question at issue here.

admittedly intended to insure the property . . . the contract was reformed to cover the actual owner, even thought there was no evidence that the insurer had any information which would put it on inquiry as to the true identity of the owner." (editing marks omitted)).)  As the Court has discussed, contract reformation is appropriate remedy where, as here, there is no third-party beneficiary cause of action.  The Gillis case stands for such a proposition; it does not suggest that California courts would create an implied third party beneficiary cause of action.

Zurich Specialties is a closer case, but this Court is not convinced that it is enough evidence that that the California Supreme Court would create an implied third-party beneficiary cause of action in the absence of any other case law.  There, the court considered whether an insurance broker owed the plaintiff a duty of care for an insurance company's failure to pay out on an insurance policy in a negligence action.  Zurich, 37 Cal. Rptr. 3d at 295–97.  The court found that the analysis required that it determine whether the plaintiff was an intended beneficiary of the insurance policy to which the broker owed a duty of care or an incidental beneficiary to which it did not owe such a duty.  Id. at 298.  Ultimately, the court concluded that although it was "not quite an intended beneficiary, it [came] close enough to being one that imposing duty" of care on the insurance broker was appropriate.  Id. at 299.  Because the circumstances here were limited to a negligence cause of action and because the Court is unaware of any other

31

similar precedent, the case is not enough to suggest that the California Supreme Court would shift the current jurisprudential landscape in favor of implied third-party beneficiary causes of action.

c.    <u>Whether Coverage is Illusory</u>

Tesoro Refining argues that, nonetheless, the Court must construe the Policy to cover Tesoro Refining as a third-party beneficiary to avoid rendering the contract illusory.  (Tesoro MSJ I at 16.)  Plaintiff is correct that, as an equitable matter, the Court cannot permit illusory coverage or coverage under which a contracting party would receive no benefit.  See <u>Md. Cas. Co. v. Reeder</u>, 270 Cal. Rptr. 719, 729 (Cal. Ct. App. 1990).  However, the coverage here is not illusory.

Under California law, "[i]nsurance coverage is deemed illusory when the insured 'receives no benefit' under the policy," <u>Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.</u>, 636 F. Supp. 2d 995, 1007 (C.D. Cal. 2009) (quoting <u>Md. Cas. Co. v. Reeder</u>, 270 Cal. Rptr. 719 (1990)), or when the coverage is conditional on some fact or event that is wholly under the promisor's control, <u>Asmus v. Pacific Bell</u>, 96 Cal. Rptr. 2d 179, 188 (Cal. 2000).

Tesoro Refining argues that "[u]nder the relevant environmental laws, the grounds upon which Tesoro Corporation could ever be found liable with respect to a facility owned by its subsidiary are exceedingly narrow."  (Tesoro MSJ I at 11.)  Tesoro continues, "Tesoro Corporation could be liable only if there were

32

grounds for piercing the corporate veil between itself and Tesoro Refining or if Tesoro Corporation itself had operated the facility by managing, directing, or conducting operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." (Id. at 11 n.5 (internal editing and quotation marks omitted).)

In so arguing, Tesoro Refining concedes that there is potentially some benefit to Tesoro Corporation under the Policy—although, arguably, the benefit was not the benefit that Tesoro Refining thought it was receiving when it purchased the Refinery from Ultramar.[10]  Nor is the coverage is conditional on some event wholly under Chartis's control: had Tesoro Corporation incurred liability, Chartis would have been obligated to pay out, assuming the deductible or SIR had been met.   Accordingly, the coverage is not illusory under California law. See Forecast Homes, Inc. v. Steadfast Ins. Co., 105 Cal. Rptr. 3d 200, 214 (Cal. Ct. App. 2010) (holding that coverage to an additional insured, where only the named

---

[10] At the hearing, the Tesoro parties suggested the Court had concluded during the 2013 on Motion to Dismiss that the liability was particularly remote.  There, the question was limited to whether there were sufficient allegations that Chartis breached the contract by failing to pay Tesoro Corporation under the Policy.  (Dkt. # 54 at 30.)  The Court found that, because Tesoro Corporation had not argued that it operated the Refinery or that the corporate veil ought to be pierced, there was no basis for a breach of contract claim.  (Id.)  However, the Court did not rule out the possibility that Tesoro Corporation may have "fac[ed] possible liability in the future."  (Id.)

insured could satisfy the SIR obligation, was not illusory because the "condition of requiring the named insured to pay the deductible amount before coverage is triggered is not a fact or event under [the insurance company]'s control or discretion").

Moreover, even if the coverage were illusory, Plaintiff is not without remedy.  Reformation of the Policy to include Tesoro Refining would provide a remedy.  Accordingly, creating a cause of action when none exists under California law is not appropriate; contract reformation would permit an equitable resolution. See Hess, 117 Cal. Rptr. 2d at 227 (reminding that mutual mistake can be a defense to a third party beneficiary claim under California law).

C.      Choice of Law

Because there is no question of fact as to the third-party beneficiary issue under either Texas or California law, the Court need not undertake a choice of law analysis.  R.R. Mgmt. Co., 428 F.3d at 222.  Accordingly, the Court **GRANTS** Chartis's Motion on the third-party beneficiary issue (Dkt. # 70) and **DENIES** Tesoro Refining's Motion on the third-party beneficiary issue (Dkt. # 71).

III.    Reformation and Statute of Limitations Issues

Again, since choice of law analysis is only necessary when the laws of the states conflict, the Court will analyze the parties' arguments as to the

34

reformation and statute of limitations issues under both Texas and California law to determine whether a choice of law analysis is necessary.

      A.    <u>Statute of Limitations for Reformation Claims</u>

      Under Texas law, a four-year statute of limitations applies to a reformation claim and runs from the date that the aggrieved party "discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." Tex. Civ. Prac. & Rem. Code § 16.051; <u>Harbor Ins. Co. v. Urban Constr. Co.</u>, 990 F.2d 195, 200 (5th Cir. 1993); <u>Tipton v. Brock</u>, 431 S.W.3d 673, 676–77 (Tex. App. 2014).

      Under California law, a three-year statute of limitations applies to a reformation claim and runs from the date that the "aggrieved party discovers, or should discover, the existence of the cause of action." Cal. Civ. Proc. Code § 338; <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1548–49 (9th Cir. 1989); <u>Schaefer v. Cal.-W. States Life Ins. Co.</u>, 269 Cal. Rptr. 183 (Cal. Ct. App. 1968).[11]

---

[11] The Tesoro parties argue that the statute of limitations under California law does not begin until actual discovery of the mistake, since § 338 does not explicitly contain a discovery provision and because California statutes of limitations explicitly set out discovery provisions when they are contained therein. (Tesoro MSJ II at 10.) "To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide. In making an <u>Erie</u> guess . . . this Court may look to the decisions of intermediate

In both states, the issue of when a mistake should have been discovered is a question of fact.  Brown v. Harvard, 593 S.W.2d 939, 944 (Tex. 1980); Broberg v. Guardian Life Ins. Co. of Am., 90 Cal. Rptr. 3d 225, 232 (Cal. Ct. App. 2009).

It is undisputed that the endorsement went into effect on May 17, 2002, and that the Tesoro parties did not file their counterclaim for reformation until January 4, 2012.  (Chartis MSJ, Ex. 20.)  However, the Tesoro parties

_____

appellate state courts for guidance."  James v. State Farm Mut. Auto. Ins. Co., 743 F.3d 65, 69 (5th Cir. 2014) (alterations, citations, and internal quotation marks omitted) (citing Erie R.R Co. v. Tompkins, 304 U.S. 64 (1938); Westlake Petrochems, LLC v. United Polychem, Inc., 688 F.3d 232, 238 n.5 (5th Cir. 2012); Howe ex rel. Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000)).

The Tesoro parties' arguments are based on general rules of statutory construction.  However, they are unable to point to any court that has interpreted the statute of limitations applicable to reformation claims to run only upon actual discovery.  Moreover, every decision this Court can locate applies the discovery rule to § 338.  In fact, the California Supreme Court has explicitly held that, in a contract reformation claim, the discovery rule applies.  Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 437 (Cal. 1945) ("[T]his court has held if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint"); Bradbury v. Higginson, 167 Cal. 553, 558 (Cal. 1914) ("The cause of action to enforce such reformation accrued, under the statute, upon the discovery of the facts constituting the mistake.  It is true that the answer avers that the defendant did not discover the mistake until August, 1909, which was within three years of the filing of the answer.  But a mere averment of ignorance of a fact which a party might with reasonable diligence have discovered is not enough to postpone the running of the statute."); accord Nichols v. Moore, 181 Cal. 131, 132 (Cal. 1919).  Given the breadth of case law applying the discovery rule in the context of the reformation statute, the Court is unconvinced by the Tesoro parties' argument that the statute of limitations for reformation claims can only run upon actual discovery.

36

contend that they did not discover, nor should they have discovered, the mistake until 2011.  (Tesoro MSJ II at 9.)  Regardless, they allege that the statute should not run until they suffered damage, which was on November 7, 2011, when they were denied coverage, or at the very least, on October 8, 2009, when they demanded coverage and Chartis refused to immediately pay out.  (Id. at 12.)  Chartis counters that the Tesoro parties should have discovered the mistake in 2002 when the assignment was issued; by at least 2006, when Tesoro Refining was litigating issues of insurance coverage; or by 2007, when Chartis issued its reservation of rights.  (Dkt. # 74 at 8.)

                1.     <u>Accrual at Date of Damage</u>

        The Tesoro parties argue that under both Texas and California law, a reformation cause of action does not accrue until the aggrieved party suffers damage.  (Tesoro MSJ II at 12–13.)  Chartis counters that the cases the Tesoro parties cite are inapposite and do not affect the general rule that the statute of limitations begins to run pursuant to the discovery rule.  (Dkt. # 74 at 6–7.)

        In support of the damage-accrual theory under Texas law, the Tesoro parties cite to <u>Fireman's Fund Indemnity Co. v. Boyle Gen. Tire Co.</u>, 381 S.W.2d 937, 939 (Tex. Civ. App. 1964), for the proposition that "where an insurer's agent had represented that an insurance policy (fidelity bond) would cover two businesses owned by the plaintiff, but the policy was written to cover only one of

those businesses, the statute of limitations for reformation of the policy began to run only when 'damage based on the misrepresentations [wa]s or reasonably should have been discovered.'"  (Tesoro MSJ II at 13 (quoting Boyle, 381 S.W.2d at 939).)

In Boyle, the court found that the statute of limitations did not bar the plaintiff's claim where the plaintiff first knew or should have known of the coverage limits in November 1960, the plaintiff discovered or should have discovered that the policy did not name A 1 as a named insured in October 1962, the suit was filed on October 6, 1961, and all amended pleadings were filed by November 5, 1962.  Id.  The Supreme Court affirmed, clarifying that although the plaintiff did not amend his petition to include reformation claims until November 1963, the plaintiff was not negligent in failing to discover the thefts until 1960 and his claims were therefore within the four-year statute of limitations.  In addressing the statute of limitations question, the Court clarified, "[e]ssentially the question for decision is whether plaintiff was charged with knowledge of the bond's limits of coverage at the time Robinson delivered the bond to Boyle in December 1957." Fireman's Fund Indem. Co. v. Boyle Gen. Tire Co., 392 S.W.2d 352, 354 (Tex. 1965).

There is no language in the Supreme Court's opinion supporting the Tesoro parties' reading.  The Court was clear that the dispositive question on the

38

statute of limitations issue was when the plaintiff should have known about the mistake; the point at which the plaintiff was damaged by the mistake did not enter the Supreme Court's analysis.  Because the Tesoro parties are unable to identify any other case law in support of their theory, the Court finds their Texas law damage-accrual argument unavailing.  See also Harbor Ins. Co. v. Urban Constr. Co., 990 F.2d 195, 200 (5th Cir. 1993) (comparing the statute of limitations for actions on debts, which runs from denial of coverage, to the statute of limitations for reformation actions, which is subject to the discovery rule).

         In support of the damage-accrual rule under California law, the Tesoro parties cite to four cases: Fanucci v. Allstate Insurance Co., 638 F. Supp. 1125, 1127 (N.D. Cal. 2009); Flax v. Prudential Life Insurance Co. of Am., 148 F. Supp. 720, 727 (S.D. Cal. 1957); Butcher v. Truck Insurance Exchange, 92 Cal. Rptr. 2d 521, 541 (Cal. Ct. App. 2000); and American Surety Company of New York v. Heise, 289 P.2d 103, 107–08 (Cal. Ct. App. 1955).  The Tesoro parties are correct that Fanucci found that the statute of limitations did not accrue until the aggrieved party suffered damage.  638 F. Supp. at 1127.  However, this holding was premised on the fact that the plaintiff had alleged breach of contract and negligence claims, for which damages were an element.  Id.  As the court explained, a statute of limitations accrues when the elements of the cause of action are complete, unless the discovery rule tolls the accrual until a later date.  Id.  In

this case, because damage was an element of the breach of contract and negligence claims, the cause of action was not complete until the damage occurred.  Id. Therefore, although the damage affected accrual in Fanucci, damages are inapposite in the contract reformation setting, where damages are not an element of the cause of action.

In Flax, the court found that, although to overcome the three-year statute of limitations for mistake under state law the aggrieved party would have to show why the discovery of the mistake was not made sooner, the statute of limitations could be tolled under federal equity principles until the aggrieved party sought action on the contract in which the mistake occurred.  148 F. Supp. at 727. However, the Supreme Court clarified in 1980 that federal courts, when dealing with matters pursuant to their diversity jurisdiction, must follow state law in determining the tolling and accrual periods for state statutes of limitations.  See Walker v. Armco Steel Corp., 446 U.S. 740, 750–51 (1980).  Therefore, the court's holding in Flax, which applied federal law in lieu of state law on the limitations issue, does not bind this Court.

Butcher is similarly unhelpful for the Tesoro parties' argument.  92 Cal. Rptr. 2d at 541.  The Tesoro parties cite language from the section of the opinion discussing negligence, which, as outlined above, requires a showing of damages.  Id.  When the court addressed the reformation issue, it stated:

40

> Respondents fare no better on the reformation cause of action.  The
> three-year statute, Code of Civil Procedure section 338, subd. (d),
> provides that the cause of action does not accrue, when the ground of
> relief is mistake, until the aggrieved party <u>discovers the facts
> constituting the mistake</u>.  Respondents produced no evidence that the
> Butchers were aware, more than three years before October 1994
> (when they filed a third-party complaint against Truck and Meyer),
> that the Truck policy did not contain personal injury coverage.

<u>Id.</u> (emphasis added).  Accordingly, <u>Butcher</u> makes clear that the point at which

the aggrieved party discovers the mistake is the applicable standard in the

reformation context.

<u>Heise</u> is similarly unhelpful.  289 P.2d at 107–08.  The Tesoro parties

cite the language, "[a] suit for reformation may be and usually is maintained after a

loss which would fall within the policy as reformed."  <u>Id.</u>  The Court agrees with

this general proposition.  In most cases, the aggrieved party would not have reason

to discover the policy's deficiency until it is unable to recover under that policy.

However, damage is not a requirement: so long as the party had other reason to

discover the mistake, the limitations period begins to accrue.

Because none of the cases that the Tesoro parties cite support their

damage-accrual theory under California law, the Court finds their damage-accrual

argument unavailing.

2.      Date of Discovery

The Tesoro parties contend that they did not learn that the Policy did
not cover both Tesoro Corporation and Tesoro Refining until November 2011.
(Tesoro MSJ II at 11.)  Chartis counters that the Tesoro parties should have been
aware in 2002, in 2006, or in 2007 that the Policy did not cover Tesoro Refining.

a.      2002

Chartis first argues that the Tesoro parties should have been aware
that the Policy did not cover Tesoro Refining in 2002, when the endorsement was
issued.  It contends that Texas and California law presume that a party has read the
insurance policy and is charged with the knowledge of the terms therein.  (Dkt.
# 74 at 8.)

i.      Background

The circumstances here are somewhat unusual because the Tesoro
parties did not purchase the coverage from Chartis: the coverage was assigned to
Tesoro Corporation in conjunction with the purchase of the Refinery.  According
to the undisputed facts, when Ultramar originally obtained the Policy from Chartis,
it filled out an application for coverage listing both the subsidiary company that
owned and operated the Refinery, Ultramar, Inc., and itself, the parent company, as
entities requesting coverage.  (Dkt. # 71-3 at 2, 5.)  However, when Chartis
underwrote the Policy, it inadvertently left the subsidiary–operator of the facility

42

off of the Policy.  (Dkt. # 71-7 at 79–80 ("But the, the operator wasn't even named in the policy. . . .That was an oversight.  It had been requested and it should have been on the policy.").)

Two years later, when Tesoro Corporation was assigned the Policy, the Tesoro parties did not fill out an application for insurance; instead, Marsh contacted Chartis in February 2002, advising that Tesoro Corporation was in the process of acquiring the Refinery covered by the Policy and would need to be assigned the Policy.  (Dkt. # 70-3 at 20.)  Marsh continued to discuss the assignment with Chartis throughout March and April 2002 (Dkt. # 71-9 at 56; Dkt. # 71-7 at 12), until Chartis concluded that it would "assign th[e] policy to Tesoro" after (1) receiving a written request from Ultramar that it had assigned its rights under the Tosco indemnity to Tesoro and (2) scheduling a meeting with Tesoro about environmental management.  (Dkt. # 71-7 at 12.)  On May 15, 2002, Chartis sent Ultramar a letter confirming that Chartis had agreed to assign the Policy to Tesoro Corporation.  (Dkt. # 71-7.)

On May 16, 2015, Ultramar sent Chartis a formal written request to assign the Policy to Tesoro Corporation.  (Dkt. # 70-3 at 31.)  On the same day, Marsh forwarded the specimen endorsement issued by Chartis to Charlie Doerr ("Doerr"), then Director, Risk Management at Tesoro Corporation.  (Dkt. # 70-3 at 32.)  On May 29, 2015, Marsh sent Chartis its formal broker request to assign the

43

Policy "to Tesoro."  (Id. at 34.)  On June 28, 2002, Marsh forwarded Doerr the

final endorsement amending the named insured to be Tesoro Corporation and

adding Valero as an additional insured.  (Id. at 36.)

ii.    Presumption of Knowledge

Under both Texas and California law, an insured party that accepts a

policy without disagreement is presumed to know its contents.  Boyle, 392 S.W.2d

352, 355; Williams v. Hilb, Rogal & Hobbs Ins. Servs. of Cal., Inc., 98 Cal. Rptr.

3d 910, 921 (Cal. Ct. App. 2009).  Because Tesoro Corporation did not contest the

endorsement at the time of assignment, the Tesoro parties are presumed to know

the contents of the Policy.

However, that presumption is rebuttable.  Under Texas law,

presumption of knowledge can be overcome with a showing that the insured did

not read the policy upon receipt or that the insured relied upon the knowledge of

the insurer and assumed it was correct.  Boyle, 392 S.W.2d at 355. Under

California law, presumption of knowledge can be overcome with evidence that the

application for insurance correctly represented the insured's understanding of the

policy even though the ultimate policy did not, or that the aggrieved party relied on

the insuring agent, who held himself out as an advisor to the insured and

misrepresented the policy's coverage.  Williams, 98 Cal. Rptr. 3d at 922; Laing v.

Occidental Life Ins. Co. of Cal., 53 Cal. Rptr. 681, 686 (Cal. Ct. App. 1966).

44

In anticipation of Ultramar's August 31, 2000 purchase of the Refinery, several Marsh agents exchanged correspondence with Jeff Hubbard, underwriter at Chartis, regarding the details of the coverage.  (Dkt. # 71-6 at 2–3.) On August 25, 2000, Beverly McCoy ("McCoy") of Marsh emailed Hubbard, indicating that Helen Groos ("Groos"), also of Marsh, had authority from Ultramar to bind coverage, contingent upon a list of minor changes to the Policy draft.  (Id. at 2.)  In that email, McCoy indicated that Groos would "confirm the exact name of the UDS entity to own and operate these facilities to be reflected as the Named Insured/Additional Named Insured."  (Id.)  On August 28, 2000, Groos followed up with McCoy that "the named insured on the policy will be Ultramar Diamond Shamrock Corporation and the subsidiary that owns the facility will be Ultramar, Inc.  All of this will be on the application that Dana is in the process of completing."  (Id.)  In accordance with Groos's email, Dana Harvey, Director of Casualty Insurance for Ultramar, prepared the insurance application that listed Ultramar Diamond Shamrock Corporation as the named insured and Ultramar, Inc. as a subsidiary company requesting coverage.  (Dkt. # 71-3 at 2, 5.)  The undisputed evidence therefore demonstrates that both Ultramar and Marsh, as its agent, understood that the original policy they requested would cover the liabilities of both the subsidiary–operator of the Refinery and its parent.  Chartis shared that

45

understanding, calling the omission of the subsidiary–owner from the original policy "an oversight."  (Dkt. # 71-7 at 80.)

Nonetheless, when Harvey sent the official request for assignment to Chartis on May 16, 2002—a request that was carbon copied to Groos—she requested only that "Tesoro Petroleum Corporation . . . become the named insured and [that] Valero Energy Corporation . . . be an additional insured on this policy." (Dkt. # 70-3 at 31.)  Likewise, when Groos sent her formal broker request, she referred to the assignment as an assignment to "Tesoro."  (Dkt. # 70-3.)

Accordingly, there is a question of fact as to whether (A) Tesoro— through its agents Marsh, as the insurance broker, and Ultramar, as requestor of the coverage—should have known that both the parent and subsidiary–operator needed to be named insured on the Policy and failed to make the assignment request accordingly, thereby imputing knowledge to Tesoro in 2002, or (B) Tesoro, through its agents, understood the Policy as written to cover the subsidiary–operator of the Refinery without listing the subsidiary–operator as a named insured, since Marsh and Ultramar had originally requested that coverage, Chartis intended that the Policy provide that coverage, and the ultimate Policy listed only the parent as the insured—or, in other words, whether Tesoro relied on Chartis's misrepresentation of the scope of the Policy that was ultimately issued, thereby overcoming the presumption of knowledge in 2002.  See Dugan v. Gen.

46

Accident Fire & Life Assurance Corp., 421 S.W.2d 717, 720 (Tex. Civ. App. 1967) (imputing the agent's act to the insured when the insured employs an experienced agent to represent his interests in the insurance context).

          b.    2006

        Chartis next argues that the Tesoro parties should have discovered the mistake in 2006, when Tesoro Refining was involved in litigation with Tosco, a prior owner of the Refinery.  (Dkt. # 74 at 11.)  Chartis argues that Tesoro Refining admitted, during that litigation, that "[t]he scope of coverage is not coextensive with Tesoro's liability under the August 2000 Agreement" and that non-named insureds, such as Tosco, were not entitled to coverage.  The Tesoro parties respond that the litigation had nothing to do with the "Named Insured" or whether the Policy covered subsidiaries; the litigation concerned the scope of the indemnity provision and there was an ancillary issue in which Tosco made arguments regarding the named insured.

        The litigation was a suit brought by Tesoro Refining against Tosco, which sold the Refinery to Ultramar with an indemnification of $50 million for pre-existing conditions.  (Dkt. # 70-3 at 51.)  Tesoro Refining argued that Tosco was aware of environmental conditions at the Refinery that it concealed or failed to disclose, for which Tesoro Refining subsequently faced liability.  (Id. at 52.)  Because of certain limitations on the $50 million indemnity, which Tosco assigned

to Tesoro Refining when it purchased the Refinery, Tosco took the position that it would not reimburse the environmental conditions in dispute.  (Id. at 55.)  Tesoro Refining ultimately sued Tosco for fraud in failing to disclose material environmental conditions at the Refinery, on which Tesoro Refining detrimentally relied in deciding to purchase the Refinery.  (Id. at 56.)

In Tesoro Refining's 2006 Opposition to Tosco's Motion for Summary Judgment, Tesoro Refining argued:

> Neither can Tosco negate its fraud by relying on the environmental insurance coverage obtained by Ultramar as part of the August 2000 transaction. . . . The scope of coverage is not co-extensive with Tesoro's liability under the August 2000 Agreement, and it remains to be seen what position the insurers will take concerning coverage for undisclosed conditions that were known to Tosco.
>      Even if the policies do ultimately provide coverage for the undisclosed conditions, Tosco offers no authority or rationale for how such coverage could defeat Tesoro's fraud claims.  Tosco did not pay the premium for these policies, and Tosco is not a named insured.

(Dkt. # 70-3 at 82.)

The argument appears in Tesoro Refining's response to Tosco's Motion for Summary Judgment—a document which is redacted in full, but for the excerpt above.[12]  (Id. at 58–83.)  At the hearing in this case, the Tesoro parties argued that the statements regarding the Policy related to whether Tosco was a

---

[12] The document states, "redacted per confidentiality order and agreement."  (Dkt. # 70-3 at 58.)

48

named insured, which was known and obvious to all involved and would not have required counsel to refer to the endorsements on the Policy.

Although the Tesoro parties may well be correct that counsel need not have referred to the Policy to learn that Tosco was not a named insured on the Policy, that is not the end of the Policy's relevance to the litigation. The issue in the litigation arose out of who would pay for the environmental liabilities that Tosco allegedly failed to disclose. It is inconceivable that, in choosing to bring this litigation and during the litigation, Tesoro Refining did not examine the Policy and its scope of coverage to determine that the liabilities were pre-existing conditions under the Policy and were subject to the $50 million SIR. Accordingly, the Court finds, as a matter of law, that the Tesoro parties should have discovered that Tesoro Refining was not covered under the Policy by at least 2006, rendering their 2011 and 2012 filings beyond the limitations period.[13] See Dickens v. Harvey, 868 S.W.2d 436, 441 (Tex. App. 1994) (finding that plaintiff was on notice of the mistake for which he sought reformation because he had been sued twice previously in actions that required the interpretation of the contract he sought

---

[13] This seems especially clear given that other environmental liability policies that Tesoro held with Chartis and that the Tesoro parties supplied as evidence in this case expressly named the appropriate subsidiaries on the named insured endorsement—they did not define "Named Insured" to include all of the parent company's subsidiaries. (See Dkt. # 76, Harvey Decl., Exs. A–D.)

49

to reform); <u>Hulsey v. Koehler</u>, 267 Ca. Rptr. 523 (Cal. Ct. App. 1990) (noting that the court denied plaintiff's motion to amend complaint to include a reformation claim because the statute of limitations had begun to run when plaintiff discovered the mistake in the promissory note during past litigation alleging tort claims arising out of the sale of a mobile home park).

Because both the Texas and California statutes of limitations bar the reformation claim, the Court need not undertake a choice of law analysis.  <u>R.R. Mgmt. Co.</u>, 428 F.3d at 222.  Accordingly, the Court **GRANTS** Chartis's Motion as to the reformation issue (Dkt. # 70) and **DENIES** the Tesoro parties' Motion on the Reformation and Statute of Limitations Issues.  (Dkt. # 71).

<u>CONCLUSION</u>

The Court **GRANTS IN PART AND DENIES IN PART** Chartis's Motion to Strike (Dkt. # 75), **GRANTS** Chartis's Motion for Summary Judgment (Dkt. # 70), **DENIES** the Tesoro Refining's Motion for Partial Summary Judgment on the Third-Party Beneficiary Issue (Dkt. # 71), and **DENIES** the Tesoro Parties' Motion for Partial Summary Judgment on the Reformation and Statute of Limitations Issues (Dkt. # 72).

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, July 10, 2015.

_____
David Alan Ezra
Senior United States Distict Judge